# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**MAR 23 2026**

**JEFFREY P. COLWELL**
**CLERK**

Civil Action No. _____

(To be supplied by the court)

RODNEY DOUGLAS EAVES, et al.,
_____, Plaintiffs

v.

**Jury Trial requested:**
**(please check one)**
**X** Yes _____ No

See Attached _____,

_____,

_____,

_____, Defendant(s).

*(List each named defendant on a separate line. If you cannot fit the names of all defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Section B. Do not include addresses here.)*

---

## PRISONER COMPLAINT

---

## NOTICE

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

**Plaintiff need not send exhibits, affidavits, grievances, witness statements, or any other materials to the Clerk's Office with this complaint.**

## A.    PLAINTIFF INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

Rodney Eaves, DOC #173190, P.O. Box 6000, Sterling, CO. 80751
(Name, prisoner identification number, and complete mailing address)


(Other names by which you have been known)


*Indicate whether you are a prisoner or other confined person as follows: (check one)*

____ Pretrial detainee
____ Civilly committed detainee
____ Immigration detainee
__X__ Convicted and sentenced state prisoner
____ Convicted and sentenced federal prisoner
____ Other: (*Please explain*) _____


## B.    DEFENDANT(S) INFORMATION

*Please list the following information for each defendant listed in the caption of the complaint. If more space is needed, use extra paper to provide the information requested. The additional pages regarding defendants should be labeled "B. DEFENDANT(S) INFORMATION."*

Defendant 1:    Carlos G. Rodriguez-Gonzalez, Corrections Officer, 12101 C.R. 61,
(Name, job title, and complete mailing address)

CO. 80751

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes ____ No (*check one*). Briefly explain:

Defendant is a state employed correctional officer.


Defendant 1 is being sued in his/her __X__ individual and/or ____ official capacity.

2

Defendant 2:  <u>Anthony Russell, Corrections Officer, 12101 C.R. 61, Sterling, CO.</u>
(Name, job title, and complete mailing address)

80751

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes ____ No (*check one*).  Briefly explain:

Defendant is a state employed correctional officer.

Defendant 2 is being sued in his/her __X̶__ individual and/or ____ official capacity.

Defendant 3:  <u>Myra Chubbuck, Corrections Officer, 12101 C.R. 61, Sterling, CO.</u>
(Name, job title, and complete mailing address)

80751

At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?  __X__ Yes ____ No (*check one*).  Briefly explain:

Defendant is a state employed correctional officer.

Defendant 3 is being sued in his/her __X__ individual and/or ____ official capacity.

## C.     JURISDICTION
*Indicate the federal legal basis for your claim(s): (check all that apply)*

__X__     State/Local Official (42 U.S.C. § 1983)

____     Federal Official
As to the federal official, are you seeking:
____ Money damages pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)
____ Declaratory/Injunctive relief pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, or 28 U.S.C. § 2201

____     Other: (*please identify*) _____

3

## D.    STATEMENT OF CLAIM(S)

*State clearly and concisely every claim that you are asserting in this action. For each claim, specify the right that allegedly has been violated and state all facts that support your claim, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific legal cases to support your claim(s). If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s). Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "D. STATEMENT OF CLAIMS."*

CLAIM ONE:    Plaintiff--Rodney Eaves--Individual Capacity Claims Only for First Amendment Freedom of Religion Violations.

Claim one is asserted against these Defendant(s):
Anthony Russell; Myra Chubbuck; Leah DeFord; Gynetta Rynek; Jose Ruiz; Marshall Griffith; Lamar Richardson; Benjerman Valdez; Julie Russell; Carlos G. Rodriguez-Gonzalez; and Johanna Kennedy.

Supporting facts:

1. On 05/17/24, an email was sent to Carlos G. Rodriquez-Gonzalez ("Gonzalez") informing him I was allowed to wear my Eagle feathers.

2. On 05/22/24, DeFord approached me during a shakedown and informed me that she had received an email informing her I had been approved to receive a new Eagle feather case because my privious one had been thrown in the trash by officers at the Fremont Correctional Facility and my feathers were becoming damaged.

3. The case was needed to protect the feathers when they were not being worn.

4. On 05/31/24, Anthony Russell knew my Eagle feather case had been approved and still declared it contraband thereby denying me the protective case.

5. On 06/05/24, Gonzalez retaliated against me fro practicing my belief of wearing my Eagle feathers on my head so when the Creator looks down on me, it sees that I humble myself below the creation. This way the Creator will show favor on me because I walk on my Grandmother as a humble man.

6. I was on my way to chow when Gonzalez said very sarcastically, "Hey you with the feathers on your head, are you going to the sweatlodge?"

7. Gonzalez knew I was not going to the sweatlodge as it was a lockdown at my unit was being escorted to chow by a number of officers.

8. I said "no" and he stated I needed to return to my unit and remove them if I wanted to eat.

9. I said "ok" and returned to my unit where I retrieved my religious exemption form and a copy of the section of AR 800-01(IV)(R)(8)/(10). See Attached Exhibits #1 and #2.

4

Original form provided free of charge by CDOC Legal Services to Offender

## E.    PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?  __X__ Yes ___ No (*check one*).

*If your answer is "Yes," complete this section of the form. If you have filed more than one previous lawsuit, use additional paper to provide the requested information for each previous lawsuit. Please indicate that additional paper is attached and label the additional pages regarding previous lawsuits as "E. PREVIOUS LAWSUITS."*

Name(s) of defendant(s):                 Eaves v. El Paso Cnty. Bd. of Cnty. Comm'rs, et al.

Docket number and court:                 16-cv-01065-KLM

Claims raised:                           Excessive Force; Due Process & Cond. of Confinement.

Disposition: (is the case still pending?
has it been dismissed?; was relief granted?)    Settlement Reached

Reasons for dismissal, if dismissed:     _____

Result on appeal, if appealed:           _____


## F.    ADMINISTRATIVE REMEDIES

*WARNING: Prisoners must exhaust administrative remedies before filing an action in federal court regarding prison conditions. See 42 U.S.C. § 1997e(a). Your case may be dismissed or judgment entered against you if you have not exhausted administrative remedies.*

Is there a formal grievance procedure at the institution in which you are confined?

        __X__ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

        __X__ Yes ___ No (*check one*)

## G.    REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "G. REQUEST FOR RELIEF."*

See Attached

## H.    PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's Signature)

Feb. 13, 2026
(Date)

(Revised November 2022)

6

PLAINTIFFS (Continued)

Rodney Douglas Eaves,

Edward Maes,

Taylor Bandy, and

Marcellous Roebuck.


A.      PLAINTIFFS' INFORMATION (Continued)

- Edward Maes, DOC #194390, P.O. Box 6000, Steling, CO. 80751
  Convicted and sentenced state prisoner.

- Taylor Bandy, DOC #166798, P.O. Box 6000, Sterling, CO. 80751
  Convicted and sentenced state prisoner.

- Marcellous Roebuck, DOC #89490, P.O. Box 6000, Sterling, CO. 80751
  Convicted and sentenced state prisoner.


B.      DEFENDANTS' INFORMATION (Continued)

Defendant 4: Leah DeFord, Corrections Officer, 12101 C.R. 61 Sterling, CO. 80751.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 4 is being sued in her Individual Capacity Only.


Defendant 5: Gynetta Rynek, Corrections Officer, 12101 C.R. 61, Sterling, CO. 80751.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 5 is being sued in her Individual Capacity Only.

Defendant 6: Jose Ruiz, Corrections Officer, 12101 C.R. 61, Sterling, CO. 80751.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 6 is being sued in his Individual Capacity Only.

Defendant 7: Marshall Griffith, Grievance Officer, 1250 Academy Park Loop, Colorado Springs, CO. 80903.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 7 is being sued in his Individual Capacity Only.

Defendant 8: Lamar Richardson, Faith & Citizen Coordinator, 1250 Academy Park Loop, Colorado Springs, CO. 80903.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 8 is being sued in his Individual Capacity Only.

Defendant 9: Benjerman Valdez, Corrections Officer, 12101 C.R. 61, Sterling, CO. 80751.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 9 is being sued in his Individual Capacity Only.

Defendant 10: Julie Russell, Grievance Officer, 1250 Academy Park Loop, Colorado Springs, CO. 80903.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 10 is being sued in her Individual Capacity Only.

8

Defendant 11:  Johanna Kennedy, Corrections Officer, 1250 Academy Park Loop, Colorado Springs, CO. 80903.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 11 is being sued in her Individual Capacity Only.


Defendant 12:  Kerri Delarosa, Faith & Citizen Coordinator, 1250 Academy Park Loop, Colorado Springs, CO. 80903.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed correctional officer.

Defendant 12 is being sued in her Official Capacity Only.


Defendant 13:  Moses Stancil, Executive Director, 1250 Academy Park Loop, Colorado Springs, CO. 80903.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state employed official.

Defendant 13 is being sued in his Official Capacity Only.


Defendant 14:  Jared Polis, Governor of Colorado, 136 State Capital, Room 136, Denver, CO. 80203.

At the time the claims in this complaint arose, the Defendant was acting under the color of state law because:

Defendant was a state elected official.

Defendant 14 is being sued in his Official Capacity Only.

D.    STATEMENT OF CLAIMS (Continued)

10. I went back outside and approached Gonzalez and said "excuse me sir, I have religious exemption form to wear these feathers and the policy has changed. Your a captain, and you should know your policy."

11. He stated, "are you trying to tell me how to do my job? In fact, I am giving you a direct order to remove those."

12. I told him I had a right to wear them and was not going to remove them.

13. He said, "your going to the hole then."

14. He called Kennedy and Officer Gifty Anima to remove me from general population and place me in restrictive housing for practicing my beliefs.

15. I was cuffed and taken without resistence and on my way to restrictive housing, I asked Kennedy why I was going to the hole as she had seen I did nothing wrong.

16. She stated her and the captain would investigate the situation.

17. Once I arrived in restrictive housing, I showed her the religious exemption and AR policy and she took them from me. See Attached Exhibits #1 and #2.

18. She said "this paperwork could be forged and I will verify its authenticity."

19. She then told me to take off my Eagle feather as I was not allowed to have them.

20. I told her I had a permit from the Federal government to have them and I was allowed to possess them even while I was in the hole. See AR 650-03(IV)(C)(2)(b).

21. She stated she use to be a religious coordinator and knew the policies.

22. She told me that if I did not give them to her they would be taken by force.

23. I removed my sacred Eagle feathers and gave them to her.

24. After Gonzalez and Kennedy discovered that I was correct about the policy, Gonzalez realized he could not write me up for disobeying a lawful order so he retaliated and fabricated false charges and claimed I advocated for a riot. See COPD Case #24-2759.

25. Kennedy retaliated by taking my feathers and throwing them in a trash bag along with the rest of my property and they were damaged.

26. Because Anthony Russell would not give me my approved Eagle feather case, there was no safe place to store them and they were damaged beyond use.

27. This deprived me of being able to wear these feathers as the creator would look down and see I had no respect for the creation and allowed those sacred feathers to be taken and damaged.

28. I was forced to cut myself and pour out blood on the ground for this transgression.

10

29. Gonzalez used a calculated retaliation by placing me in restrictive housing for 5-days and gave an order to dispose of video evidence before my COPD hearing so I could not disprove the charges.

30. In addition to 5-days in RHU, during this time I was not given any of my sacred religious items so I could not practice my beliefs in any capacity, and I was given loss of privileges for 20-days which included no phone, visiting, recreation and general library.

31. To demonstrate this was retaliation against me specifically, Offender Phillip Gurule, DOC #82747, a Native American practioner, in COPD Case #25-1277, assulted a correctional officer and had to be pepper sprayed.

32. Assulting a correctional officer is a felony offence. See §16-2.5-135 and §18-3-203.

33. For this offense, Gurule was given 2-days in restrictive housing and was allowed to keep at his sacred items while there, and was given $7.40 in restitution to replace the pepper spray as his only punishment.

34. I was threatened with physical force by Kennedy if I did not give up my Eagle feathers preventing me from practicing the wearing of my religious headwear.

35. For practicing my way of life by showing the Creator I am a humble man, Gonzalez placed me in restrictive housing and deprived me of the ability to practice my religion and even took my medicine bag which I use for protection, my faith box was even denied.

36. Without my faith box, I was denied the sacred herbs contained inside and prevented me from being able to make offerings and asking the Creator for protection while I was in restrictive housing.

37. I even went without food for those five days as my medical records show I was on a hunger strike for "religious persecution." See Attached Exhibit #3.

38. On 06/18/24, after my release from restrictive housing, harrassment and retaliation continued by Myra Chubbuck.

39. Chubbuck then denied me access to the faith grounds to observe the change of seasons. (A Sac and Fox Holy Day). i.e. Summer Solstice.

40. Access to the faith grounds was required to observe the Holy Day because it is the only place in the facility I can burn herbs to purify my body and spirit in order to enter the season without offending the spirits of that season.

41. I am also required to build a fire and make food offerings to it by throwing the food I want for myself into the fire.

42. Access was also needed to participate in the sweatlodge ceremony.

43. By denying me access as a form of retaliation, I was denied the ability to practice any of my beliefs which can only be observed on the faith grounds.

11

44. The faith grounds is the only location in the Colorado Department of Corrections where Native American practioners can practice their beliefs.

45. On 06/18/24, I reached out to DeFord for help so I could get access so I could practice my way of life.

46. She knew the policy and told me as a Native American I could observe my beliefs alone in my cell. See DOC #R-SF24/25-00262034-1.

47. On 09/05/24, retaliation continued when Rynek repeatedly took money from me in the form of postage in order to purchase religious materials I needed so I could participate in faith group practices. See DOC #R-SF24/25-00267653-1.

48. First, Rynek tried to deny me the AR Form 800-01H so I could order the needed materials in order to practice my beliefs.

49. By denying me access to the form, I could not purchase needed materials like sage, ceder and sweetgrass and without these herbs, purification and prayers were not performed.

50. So purchased my own herbs to use for the faith group and I was threatened with a COPD action by Rynek if I used my personal faith materials to participate in group reliegious activities.

51. In Sac and Fox beliefs, a circle is formed when we pray and is part of participating in the community prayer.

52. Before praying, the spirit is purified so prayers are done in a good way and to remove ill intentions or bad thoughts before praying.

53. This is accomplished by burning those herbs that were denied to be purchased for the group using AR Form 800-01H.

54. I could not use my personal herbs either which denied me the ability to participate in community prayer under threat of discipline by Rynek.

55. This was a continued attempt to thwart my way of life in the form of retaliation.

56. On 12/16/24, Griffith kept the postage money claiming it was returned but my banking statements never reflected such return. This prevented me being able to purchase my own materials si I could even practice my own purification before personal prayers.

57. Without purification, no prayers can be conducted.

58. In a coordinated retaliation, because of all the issues I was raising about my religious practices, on 12/24/24 and 12/31/24, I was again denied by Ruiz, Richardson and Griffith, access to the faith grounds in order to participate in a Sac and Fox Holy day. (i.e. Winter Solstice). See DOC # R-SF24/25-00276127-1 thru 3.

59. Access was needed to observe this Holy Day for the same reasons as provided in ¶¶ 40-42.

12

60. On 02/26/25, in a continued coordinated retaliation, once I stated getting the AR Form 800-01H, Valdez, Ruiz, Richardson and Griffith each began forcing me to purchase materials needed for community prayers strickly from CDOC's canteen and told me I was no longer allowed to purchase materials needed for ceremony from approved vendors. See DOC #R-SF24/25-00281812-1 thru 3.

61. The items I was now forced to purchase from CDOC's canteen were defective or was not the item canteen claimed it was.

62. The sage offered from canteen would not burn because it was all sticks and contained very little leaf so it would not burn. See Exhibit #4.

63. The sweetgrass braids provided by canteen were not really sweetgrass and were fake. They too would not burn and when they did it stunk. See Exhibit # 5.

64. These materials are needed to purify the body and spirit for prayer and sweetgrass is used to bless the stones when they enter the sweatlodge and to purify objects before they enter the sweatlodge.

65. By no longer allowing me to purchase needed materials from approved vendors, Ruiz, Richardson, and Griffith deprived me of the ability to practice these beliefs and purification ceased as the defective items from canteen could not be used.

66. Without being able to purify myself, ceremonies were not conducted.

67. As a continued coordinated retaliation, Rynek, Richardson, and Griffith each outright begin denying me any access to the faith grounds on 03/19/25. See DOC #R-SF24/25-00284300-1 thru 3.

68. I needed access as there is no other place to practice my beliefs in any capacity accept on the approved faith grounds. See ¶¶ 40-42.

69. I was denied the ability to practice my Sac and Fox beliefs by these three officers in any capacity between 03/19/25 thru 07/27/24, as the reason I was being denied access was false and was a deleberate retaliation for the issues I was raising about my religious practices.

70. As a continued assault on my way of life, I was unable to practice my Sac and Fox beliefs by Griffith when on 04/30/25 he took $400 from me I was using to purchase materials for my faith group. See DOC #R-SF24/25-00288041-1.

71. Instead of returning this money so I could do what I was being instructed to do by Griffith, which was use personal funds from my own inmate account to purchase canteen orders for group use, even though Rynek was threatning COPD charges for this action, Julie Russell gave the funds to Griffith which have never been returned.

72. When Griffith and Julie Russell took the funds and refused to return them, I could not purchase materials needed for ceremony, either group ceremony or personal ceremony.

73. The materials were needed in order to practice my religious beliefs. See ¶¶ 51-53.

13

74. As a continued coordinated retaliation, Ruiz, Rynek and Griffith then denied me the ability to practice my religious belief once I obtained herbs by denying me a lighter between 08/06/25 until 09/13/25 so I could light the herbs I had obtained.

75. I requested multiple times to receive a lighter but Ruiz, Rynek and Griffith denied this request. See DOC #R-SF25/26-00297372-1 thru 3.

76. Without fire, purification ceremonies could not be conducted which is a significant part of the Sac and Fox way of life. See ¶¶ 51-53.

77. From 05/17/24 through 09/13/25, Defendants Anthony Russell, Gonzalez, Kennedy, DeFord, Rynek, Ruiz, Griffith, Richardson, Valdez and Julie Russell retaliated against me for my religious beliefs by seizing and damaging reliegious items, taking funding I needed to purchase materials needed for ceremony, and refused access to the only place my beliefs can be conducted as a coordinated effort to break me from practicing my way of life.

78. In deprivation of funding, threats of physical violence, threats of administrative punishment and denied access to the only area my beleifs can be practiced, these individuals exercised a coordinated attack on me simply because of my faith practices in retaliation for raising concerns about my treatment as a Native American practioner in violation of my First Amendment rights.

## CLAIM TWO: Plaintiff--Edward Maes--Indivudual Capacity Claims Only for First Amendment Freedom of Religion Violations.

Claim Two is asserted against these Defendants:
Jose Ruiz; Lamar Richardson; and Marshall Griffith.

Supporting facts:

79. On 08/30/25, Ruiz denied me enough time to conduct a meaningful ceremony.

80. In my Lakota beliefs, enough time is needed to sing a serious of songs, purify the body and spirit, conduct prayers, both communial and personal prayers, conclude the ceremony with another series of songs, and then relenish the body and spirit with a feast where food is offered to the spirits.

81. This specific chain of ceremonies requires a minimum of about 6-7 hours to conduct.

82. Without conducting them in the manner as required, I cannot perform one without the other.

83. I asked Richardson who is Ruiz's boss‖ for enough time to be able to conduct these ceremonies and on 09/30/25 he also denied me enough time.

84. So on 10/29/25‖ I asked Griffith for enough time to be able to conduct these ceremonies and he also denied me enough time. See DOC #R-SF25/26-00297399-3.

85. Other faiths are allowed all the space and time needed to conduct their ceremonies.

86. As a Native American, I am singled out because my beliefs "are a pain in the ass" to deal with as stated once by Benjerman Valdez.

87. When I asked him what he ment by that, he stated it was because of all the stuff he has to do to get us out to the faith grounds, getting supplies and the strip searches that he doesn't have to do for other faiths.

88. The time also started to be limited on 08/30/25 after several other members of our group started filing grievances over access to the faith grounds. See ¶¶ 67-69. So it is quite possible I was now being limited on time as a form retaliation.

89. The time given is purposefully limited by Ruiz, Richardson and Griffith to discourage me from practicing my beliefs because Native American beliefs are a pain in the ass.

90. Without enough time to conduct these ceremonies, I do not even try to conduct them as it would be disrespectful to the spirits to summon them and not complete the process of honoring them and returning them with gifts of song and prayer for inviting them.

91. Because of the time constraints simply because my beliefs are "a pain in the ass," I am denied the ability to practice my beliefs in any capacity.

92. Even when I offered Ruiz, Richardson and Griffith a viable solution to the time limit problem, they refused it simply because I am a Native American and did not want to deal with me. See DOC #R-SF25/26-00297399-1 thru 3.

93. Their conduct violates my First Amendment right especially considering there are viable solutions and they simply refuse to provide a solution because I am "a pain in the ass."

94. Even to the date of the filing of this complaint, Ruiz, Richardson and Griffith refuse to give me enough time to conduct my ceremonies.

CLAIM THREE: Plaintiff--Taylor Bandy--Individual Capacity Claims Only for First Amendment Freedom of Religion Violations.

Claim Three is asserted against these Defendants:
Jose Ruiz; Lamar Richardson; and Marshall Griffith.

Supporting facts:

95. On 03/31/25, I approached Ruiz about being denied access to the sweatlodge area so I could practice my swaetlodge ceremony.

96. The sweatlodge ceremony is needed to purify the body and spirit, suffer with relatives past who are invited into the lodge during the ceremony, so I may sing and pray with them, and to bond with them and others who participate in the ceremony.

97. On 04/05/25, Ruiz who is well vested in Native American practices as the Sterling faith coordinator, denied me the swaetlodge ceremony, which he knew requires fire, wood buring and the sweatlodge itself, telling me that I have a classroom for my practices and that is good enough. See DOC #R-SF 24/25-00283476-1.

98. On 04/22/25, Richardson also denied me the sweatlodge ceremony by denying me access to the faith grounds where the sweatlodge is located.

99. On 05/14/25, Griffith also denied me access to the faith grounds so I could conduct a sweatlodge ceremony.

100. On 09/07/25, I requested from Richardson to be able to purchase needed materials for religious services from approved vendors by submitting a AR Form 800-01J (Amending Current Faith Group Practices). See Exhibit #6.

101. On 10/01/25, Richardson denied my request. See Exhibit #7.

102. Policy already dictates I am allowed to purchase materials from approved vendors and I explained to Richardson that these vendors "grow/handle/& disribute these herbs in a sacred way..."

103. The herbs sold by CDOC's canteen violate my religious beliefs as they cannot be used in my ceremonies. See ¶¶ 61-65.

104. In addition to being fake herbs in order to profit from Native American practitioners, the products are sold as a scheme to deprive Native Americans of useful materials needed for ceremony in order to turn a profit. See Exhibits #8 and #9.

105. These herbs are sold specifically to Native American practitioners like me as other faiths do not use these herbs in their ceremonies that I am aware of.

106. On 11/15/25, Ruiz begin to deny access to the faith grounds so I could participate in Native American practices due to wind restrictions.

107. Because my practices require the use of fire, he stated that the ceremony could not be held because of "wind speed at the airport."

108. I had this information Googled and the airport he referenced was 20-miles away and wind speeds could vary in that distance.

109. On 12/09/25, after being denied three more ceremonies because of the alleged wind speed, I requested that a wind gauge be obtained either by faith group donation or be provided by CDOC, so speeds could be taken locally. See DOC #R-SF25/26-00305776-1.

110. On 12/26/25, Ruiz claimed that one had been purchased which was a false statement and I continued to be denied ceremony based on wind speeds.

111. No funds were provided from my faith group and the Sterling Procurement Office denies ever having purchased the wind speed gauge.

112. Griffith claimed he investigated my complaint. However, this was a false statement as there was no way he could have or he would have known by documentation that no wind gauge had been purchased. His refusal to look into my allegations led to additional lost ceremonies due to wind restrictions.

113. Defendants Ruiz, Richardson and Griffith have targeted my religious beliefs in order to prevent me from practicing them by creating restrictions that no other faiths have to endure. This violates my First Amendment rights.

CLAIM FOUR: Plaintiff--Marcellous Roebuck--Individual Capacity Claims Only for First Amendment Freedom of Religion Violations.

Claim Four is asserted against these Defendants:
Jose Ruiz; Lamar Richardson; and Marshall Griffith.

Supporting Facts:

114. On 09/24/25, Ruiz denied my request to develope and maintain communications with the religious Native American community outside of the facility in order to obtain donations of materials and equipment needed for Native American ceremonies. See DOC #R-SF25/26-00297730-1.

115. Because of the severe and extreme deprivations in the ability to purchase group materials with group funds (¶¶ 60-66), threats of COPD convictions for using our own personal materials on each other (¶¶ 48-50), and restrictions on our access to approved vendors in order to purchase materials and equipment needed for ceremonies, an outreach for donations needed to be made so I could practice my faith.

116. With the denial of access to even the Native American community on the outside for donations, Ruiz placed a boot on the neck of my beliefs just to be spiteful so I could not practice my faith.

117. On 10/09/25, Richardson denied this request as well claiming I did not tell him what equipment or materials was being denied.

118. Richardson knew exactly what had not been provided because Richardson was the Faith and Citizen regional coordinator for the Sterling Correctional facility.

119. As the regional coordinator, he was responsible for any and all approval of donations and/or was responsible for processing those requests for donations.

120. His statement was therefore purely false as he claims that a review of policy determines what CDOC is allowed to provide in donations in order for me to practice my beliefs.

121. He knew that he had not attempted to seek any donations of any kind for me of the Native American faith group at Sterling and that with the other denials such as being forced to purchase defective products (i.e. herbs) from canteen that there was no way for me to be able to practice my Native American beliefs without these products.

122. On 10/30/25, Griffith also denied me access to the religious Native American community on the outside of the prison walls in order to obtain donations of needed donations and equipment so I could practice my beliefs.

17

123. Without donations, and the access needed to these donations, I am deprived of firewood needed for sweatlodge, herbs for purification, tobacco for prayer, equipment such as drums, blankets, tarps, rocks, willows, animal parts such as horns and skulls, and other materials and equipment listed in AR Form 800-01E as none of these things are being donated or provided in any capacity in almost a decade and when I try to obtain them for myself I am denied.

124. The fact these items are listed specifically in CDOC policy informs Ruiz, Richardson and Griffith that these are needed materials and equipment needed in order to practice my beliefs and they still denied me access to them.

125. Without the materials and equipment listed on AR Form 800-01E, I cannot practice my Native American beliefs in any capacity.

126. Outside donations are sought and maintained by Ruiz, Richardson and Griffith for all other religious faiths except mine in order to deprive me of the ability to practice my beliefs.

127. On 09/24/25, Ruiz even denied me water for ceremony. See DOC #R-SF25/26-00297729-1.

128. Water is not only needed for the sweatlodge ceremony, but is needed to stay hydrated and is a major security concern because of the presents of fire.

129. This demonstrates the level of spitfulness towards me and my beliefs as I was denied enough water even at the threat of wildfire concerns.

130. I was concerned however about wildfire, so without water I chose not to conduct a ceremony at all because I did not want to risk it.

131. Without fire and water, I cannot smudge to purify my body and spirit. I also cannot hold a sweatlodge ceremony which is apart of my Native American beliefs. See ¶¶ 95-97.

132. On 10/26/25, Richardson also denied me access to enough water in order for to be able to conduct a ceremony.

133. On 10/30/25, Griffith also denied me access to enough water in order for me to be able to conduct a ceremony.

134. The denial of access to enough water to hold a sweatlodge ceremony continued from Septemeber to Decemeber 2025.

135. The denial of enough water is obviously targeted against me as a Native American as these indiviuals would give me fire but not water knowing it posed a security risk but would rather deny the water than provide it.

136. Without enough water, the threat of wildfire and dehydration was a serious enough concern to me that I could not conduct any of my religious beliefs such purifing my spirit by smudging or conducting a sweatlodge.

137. Enough buckets for water were not provided until 12/13/25 and there appeared to be no reason to deny the buckets except to be spiteful as the buckets were readily available from the kitchen.

18

138. The buckets provided on 12/12/25 did come from the kitchen.


Claim Five: Plaintiffs--Native American Community of the Colorado Department of Corrections--Official Capacity Claims Only for First Amendment Freedom of Religion Violations.

Claim Five is asserted aganst these Defendants:

The Colorado Department of Corrections: Kerri Delarosa, Moses Stancil and Jared Polis.

Supporting facts:

139. The CDOC has policies and procedures that apply to every CDOC facility in the State of Colorado that are designed to target all Native American practioners.

140. These claims will seek to obtain Class Certification as the "Native American Community of the Colorado Department of Corrections" as previously titled in the U.S. District Court of Colorado, in Case No. 95-Z-2476.

141. CDOC's policies and procedures use extortion, threats of physical violence, civil actions (i.e. COPD convictions), theft and/or destruction of sacred religious property, deprivation of materials and equipment, constant facility transfers, constant proselytizing by other religious faiths (especially Chistian faiths) to convert because they receive more resources in order to deprive Native Americans of their religious practices in CDOC.

142. The paragraphs from above demonstrate these practices.

143. This is also due to a lack of training in which CDOC has become aware of leads to constitutional violations.

144. In Depositions conducted in 21-cv-01269-KAS (D. Colo.), Defendant Griffith testified on 06/18/25, that "training is so important." p.34:23.

145. Griffith testifies he has not received any training about Constitutional standards but his "supervisors are aware" of these standards. p.52:2-8.

146. In the same case, Jason Smith testified on 06/16/25, that after being a housing sergeant, he was promoted to a Faith and Citizen regional coordinator. p.16:17-21.

147. The regional coordinator "plans, directs, and coordinates all aspects of faith-based programs, including approval and training of both lay and clergy volunteers from faiths represented by the offender population." AR 800-01(IV)(K).

148. This includes "requesting amendments to currently recognized faith group practices or property items..." AR 800-01(IV)(B).

19

149. However, Smith testified that CDOC staff are not really trained in religious rights, "[w]e were really just told that we know that there are First Amendment rights and then we were to also follow our policy." p.39:11-16.

150. CDOC has created a systimic problem by not training staff in what rights the Constitution guarantees an inmate, then CDOC promotes the individuals to positions to train others, thereby creating a perpetual lineage of staff who violate religious rights.

151. This is a longstanding tradition that CDOC was aware was causing constitutional rights violations as demonstrated below.

152. On 07/30/21, Steven Roybal, CDOC #91690, while being housed at the Limon Correctional Facility, was charged with theft in COPD Case #220107 for alledgedly stealing an Eagle feather from Limon's religious property.

153. Steven Roybal is a registered tribal memeber of the Lakota tribe of the Pineridge Reservation in South Dakota.

154. Only registered tribal members of an American Indian tribe may possess Eagle feathers by federal law. See 16 U.S.C. §668a.

155. It is impossible to steal something that, one, is not on Limon's faith group property list, two has no authority to possess, and three, belongs to a registered tribal member.

156. Under threats of continued COPD convictions, Mr. Roybal stopped pursing the issue. He was then transferred to the Sterling Correctional Facility.

157. Roybal's attempt to bring attention to the use of COPDs to suppress Native American religious practices went ignored. See DOC #R-LF21/22-00197239-3.

158. Roybal's attempt to bring attention to the denial of time and space for Native American ceremonies and destruction of sacred items went ignored. See DOC #R-LF22/23-00219514-3.

159. Tyler Condon's attempt to bring attention to the destruction of Native American religious items was also ignored. See DOC #R-FF23/24-00250307-3.

160. Jimmy Gutierrez's attempt to bring attention to discrimination in granting other religions time and space to conduct their services but not Native Americans were ignored.

161. Jimmy's request to the denial of access to the Native American faith community outside of the prison were ignored. See DOC #R-SF21/22-00207789-3.

162. Roybal's request for materials such as rock and willows for the sweatlodge ceremony are effectively denied when CDOC staff claim a request has been sent but these items are then never provided. See DOC #R-SF25/26-00297728-3.

163. David Archuleta's attempt to inform CDOC staff that the Native American faith cannot be practiced in a cell is ignored. See. DOC #R-SF22/23-00218496-3.

20

164. Claims of denied services for Native Americans due to staffing shortages when no other faith is subject to such deprivations is also ignored. See DOC #R-SF25/26-00297727-1.

165. After Rodney Eaves filed Case No. 21-cv-01629-KAS, he feared retaliation and requested protections from the Court. See ECF DOC# 105.

166. Then Eaves was retaliated against as he feared. See Case No. 23-cv-01625-GPG-KAS, ECF DOC# 86.

167. Native Americans in CDOC are also being labled as "Caucasian" in CDOC's racial profiles.

168. This deprives Native Americans out of job positions in CDOC's labor system. See Attached Exhibit #10.

169. This is because CDOC's labor system requires a labor force for any particular job position to be filled by so many members of a particular race. (e.g. Unit Porter position has 6 slots to be filled and 2 are required to be filled by Caucasians, 2 by Black and 2 Hispanic).

170. If there are any open slots in a job position, a Native American cannot get into that position because they will be labled as Caucasians and the position will already have to many Caucasians thereby limiting a Native American's chance to seek employment in CDOC because of the way they are falsely labled.

171. Some of these violations have been going on for over two decades and are not isolated incidents. See the following:

    a. Martinez v. Ortiz, No. 05-cv-00138-WYD-BNB, alleging CDOC placed limitations on access to spiritual advisors, time and space restrictions, not allowing smudging and prayer, and prohibiting the purchase of herbs.

    b. Quintana v. Edmond, No. 06-cv-01187-WDM-KLM, alleging retaliation for filing grievances about Native American practices.

    c. Grady v. Holmes, No. 07-cv-02251-BNB, alleging not being able to perform Native American Pipe ceremonies or sweatlodge ceremonies.

    d. Rea v. Colo. Dep't of Corr., No. 09-cv-03014-REB-CBS, alleging a violation of §17-42-102 and asking for injuctive relief including prohibiting the retaliation for engaging in Native American religious practices, gaining access to sweatlodge grounds, funding for wood and organic materials, and access to approved vendors.

    e. Faircloth v. Schwartz, No. 12-cv-02764-BNB, alleging not being able to practice Native American beliefs in solitary confinement.

    f. Vigil v. Raemisch, No. 13-cv-02042-WJM-MJW, alleging discrimination about Native American hairsytles.

    g. Eaves v. Polis, No. 21-cv-01629-KAS, alleging denial of the possession of sacred religious items, the wearing of sacred religious items and access to faith grounds.

   h. Eaves v. Cox, No. 23-cv-01625-GPG-KAS, alleging the denial of religious head wear and descriminatory seperation from the Native American faith group.

   i. Gunsallus v. Hestand, No. 24-cv-00351-RMR-STV, alleging denial of access to Native American sweatlodge grounds.

172. This is a systemic problem that affects all Native American practioners in every CDOC facility in Colorado because these violations are rooted in CDOC policy.

173. Many other Native American practioners cease practicing their faith or do not assert these violations because they are intimidated by retaliation. See ¶¶ 77 & 78.

174. To demonstrate CDOC's knowledge of these violations and unwillingness to address its policies towards Native Americans, in Griffith's deposition (¶ 144 above), he testifies that he can suggest policy changes if he notices a pattern of abuse or if something is on his "mind for a couple of weeks or months, and I thought maybe we can look into this a little bit more." pp. 19-21:10-12.

175. The Eaves v. Polis case involved Defendant Griffith's denial in Eaves' alleged right to practice his Native American beliefs and this case was filed in 2021.

176. Long after Eaves filed this case against Griffith, he continued to ignore the call of other individuals who were trying to bring attention to the pattern of Native American religious rights deprivation.

177. This establishes CDOC's policies that use extortion, threats of physical violence, civil actions in the form of administrative sanctions, theft and/or destruction of sacred religious property, deprivation of materials and equipment, constant facility transfers and the proselytizing by other religions are acceptable policies and practices.

## Claim Six: Plaintiffs--Native American Community of the Colorado Department of Corrections--Official Capacity Claims Only for Fourteenth Amendment Substantive Due Process Violation.

Claim Six is asserted Against these Defendants:

The Colorado Department of Corrections: Kerri Delarosa, Moses Stancil and Jared Polis.

Supporting facts:

178. Colorado has two state laws specifically written for "all persons who are confined to a correctional facility" when it comes to the practice of religious beliefs in the Colorado Department of Corrections. §§ 17-42-101 and 17-42-102.

179. CDOC has incorporated much of the language from §17-42-101, Freedom of Worship's statute into its AR 800-01, Offender Pastoral Care, policy.

180. AR 800-01(VI) even cites §17-42-101 as its controlling authority.

22

181. CDOC, after careful consideration in the formation and creation of AR 800-01, purposefully left out §17-42-102, American Indians-Freedom of Worship, as none of the language from this statute is included in the CDOC policy.

182. CDOC knew "that serious problems in the practice of religious freedom persist for the American Indian and particularly for American Indians who are incarcerated." §17-42-102(1).

183. CDOC has chosen to not provide "access on a regular basis to the following: American Indian traditional spiritual leaders; items and materials utilized in religious ceremonies; and American Indian religious facilities." §17-42-102(2)(a-c). See ¶¶ 11, 34, 36, 39, 49, 60-64, 76, 89, 97, 100, 116, 123, 127, and 171(a).

184. By training CDOC staff to only refer to policy when determining what rights a Native American practioner has (¶ 149), it knew it would be depriving Native American practioners of their protections under the Fourteenth Amendment's Substantive Due Process Clause by leaving the language from §17-42-102 out of AR 800-01.

185. The policy was created to specifically leave out the known rights of Native Americans in order to deprive them of their religious rights.


E. PREVIOUS LAWSUITS (Continued)

Names of defendants: Eaves v. Skramsted, et al.

Docket Number and Court: 23-cv-01104-GPG-KAS; U.S. Dist. Ct. of Colorado

Claims Raised: Eighth Amendment deliberate indifference to medical needs

Disposition: Discovery phase.



Names of defendants: Eaves v. Cox, et al.

Docket Number and Court: 23-cv-01625-GPG-KAS; U.S. Dist. Ct. of Colorado

Claims Riased: First Amendment and Fourteenth Amendment claims (mail issues) and First Amendment Free Exercise and RLUIPA claims

Disposition: Discovery phase.



Names of defendnats: Eaves v. Kory, et al.

Docket Number and Court: 23-cv-01627-SBP; U.S. Dist. Ct. of Colorado

Claims Raised: Eighth Amendment Deliberate indifference to medical needs

Disposition: Cert. Denied, U.S. Supreme Court--24-6685.

Names of defendants: Eaves v. Paxton, et al.

Docket Number and Court: 23-cv-01628-GPG-KAS; U.S. Dist. Ct. of Colorado

Claims Raised: Eighth Amendment excessive fines and fees and Fourteenth Amendment Due Process

Disposition: 10th Cir. COA, 24-1400, Appeal Pending.


## G. REQUEST FOR RELIEF (Continued)


### INJUNCTIVE RELIEF:

Plaintiffs--Native American Community of the Colorado Department of Corrections-- In CDOC's Official Capacity Only:

Order the Colorado Department of Corrections to do the following:

186. Cease the retalitory destruction by CDOC staff of Native American sacred religious objects and items.

187. Cease the retalitory actions of CDOC staff in their use of facility transfers when concerns about the treatment of Native American practioners is grieved through legitimate grievance processes.

188. Cease the retalitory use of the Code of Penal Discipline ("COPD") and other administrative actions used to suppress Native American practices.

189. Cease the practice of taking a Native American practioner's sacred items while is administrative restrictive housing.

200. Cease the practice of denying Native American practioners access to the multi-faith/sweatlodge area.

201. Allow Native American practioners the ability to order religious items and materials from approved vendors, even if the items are available on canteen.

202. Give Native American practioners the time needed to conduct their ceremonies. (i.e. a full eight hours).

203. Amend AR Form 800-01K to specify that Native American practices are recognized as not being able to be conducted indoors. (i.e. sweatlodge).

204. Purchase a handheld altimeter for every facility and custody level to be used to measure wind speeds on site where the religious ceremony is to be held. (i.e. sweatlodge).

205. Provide Native American practioners with basic supplies such as fire and water.

206. Require the staff at every level within the department to undergo a 6-hour training course on the First Amendment-Free Exercise and RLUIPA rights. The curriculum must require a written test to demonstrate an understanding of these rights. The written test will be required to be kept in the personnel files.

207. Amend AR Form 800-01K to include language from §17-42-102(2)(a-c), C.R.S.

208. Amend AR 800-01(VI) to include §17-42-102 as a supporting authority.

DECLARATROY RELIEF:

Plaintiff--Rodney Eaves--against Defendants Anthony Russell, Myra Chubbuck, Leah DeFord, Gynetta Rynek, Jose Ruiz, Marshall Griffith, Lamar Richardson, Benjerman Valdez, Julie Russell, Carlos G. Rodriguez-Gonzales and Johanna Kennedy declare Mr. Eaves has the following rights:

209. The right to obtain and keep approved containers and storage devices to be used to protect his religious sacred items. (i.e. Eagle feather case & faith box).

210. The right to order from the U.S. Department of Interior six new Eagle feathers to replace the ones damaged or destroyed by staff.

211. The right to wear his religious head wear without fear of retaliation.

212. The right to a proper investigation by the Office of the Inspector General into the conduct of staff surrounding the placement of Eaves in restictive housing for wearing his religious head wear.

213. A right to recieve an official copy of the outcome of the investigation by the OIG.

214. The right to possess his sacred religious items even while being housed in Restrictive Housing. (i.e. segregation or hole).

215. The right to access the multi-faith/sweatlodge grounds for religious holy days.

216. The right to be free from extortion in order to obtain materials needed for his religious practices.

217. The right to order religious items and materials from approved vendors, even if the items and materials are available on canteen.

218. The right to basic materials needed for ceremonies such as fire and water.

219. The right to access from the distribution windows in the living units, administrative Forms AR 800-01H, I-Part 1 and Part 2, and J.

220. The right to be free from threats of administrative actions and violence by CDOC staff just for practicing his reliegious beliefs.

Plaintiff--Edward Maes--against Defendants Jose Ruiz, Lamar Richardson and Marshall Griffith declare Mr. Maes has the following rights:

221. The right to be provided enough unenterupted time to conduct his Native American religious ceremonies.

Plaintiff--Taylor Bandy--against Defendants Jose Ruiz, Lamar Richardson and Marshall Griffith declare Mr. Bandy has the following rights:

222. The right to access the muti-faith/sweatlodge area for religious practices at least once a week.

223. The right to order religious materials and items that are handled in a manner approved by his faith practices from approved vendors, even if it is available from canteen.

224. The right to conduct a sweatlodge ceremony unless wind speeds can be determined to be over the allowed limit by an on-site altimeter.

Plaintiff--Marcellous Roebuck--against Defendants Jose Ruiz, Lamar Richardson and Marshall Griffith declare Mr. Roebuck has the following rights:

225. The right to rely on CDOC to develop and maintain communications with the Native American religious community outside of the CDOC prison system. (e.g. §17-42-102(2)(a)--access to American Indian traditional spiritual leaders).

226. The right to seek donations from the people and organizations developed and maintained from the communications with CDOC for the Native American religious community.

227. The right to have enough water available to protect the prison from the risk of damage by fire.

228. The right to have enough water available to prevent dehydration and still be able to conduct the sweatlodge ceremony.

Plaintiffs--Native American Community of the Colorado Department of Corrections-- against the Colorado Department of Corrections in its Official capacity Only, declare the Native American Community has the following rights:

229. The right to access materials through approved vendors even if the materials are available on canteen.

230. The right to access equipment/items through approved vendors even if the equipment/items are available on canteen.

231. The right to practice their beliefs without fear of physical violence by CDOC staff.

232. The right to practice their beliefs without fear of administrative actions used to suppress those practices. This includes COPD actions and the taking of sacred religious items while in Restrictive Housing.

233. The right to possess sacred religious objects without fear of theft or destruction by CDOC staff.

234. The right to be free from retalitory facility transfers from using the grievance process to grieve concerns over Native American practices and beliefs.

235. The right to be free from proselytizing by CDOC staff or volunteers to convert to other faiths.

236. The right to have religious concerns heard and handled by CDOC staff who have been properly trained in the significant religious rights of all incarcerated persons in CDOC.

237. The right to be racially identified as Native American.

238. An interpretation is to be made of §17-42-101 and §17-42-102 in what is required of CDOC under the Fourteenth Amendment. This interpretation should include a declaration under the Fourteenth Amendment of the following:

    a. All persons confined in CDOC shall have the right to worship according to the dictates of their consciences, and such persons shall be afforded reasonable opportunity to freely exercise their religious beliefs without fear of retaliation or discrimination for the free exercise thereof. The term "reasonable" shall mean: a statement offered in a sane or sound mind due to the exercise of the faculty of logical thought based in reason. (e.g. Turner, 482 U.S. at 90, were there alternative means available and the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable).

    b. Upon the request of a Native American practioner, and to the extent practicable, religious facilities shall be made available and with enough time to conduct appropriate ceremonies. (i.e. Multi-faith or sweatlodge areas).

    c. The department shall permit possession of sacred religious objects by Native Americans, both personal and group religious objects.

    d. Prison officials shall accord appropriate respect for Native American sacred objects and any inspection of such objects shall be done visually and in the presents of the possesor.

    e. The department shall locate and give access on a regular basis to Native American practioners, the guidance from traditional spiritual leaders.

    f. The department shall locate and give access on a regular basis to items and materials utilized in religious ceremonies.
    The definition of "items" shall mean: religious property, either personal or group property and is defined as property not consumed during a religious ceremony, to include, but not limited to: Antlers, Blankets, Books, Videos and/or DVDs/CDs, Buffalo Skull, Canvas or other tarp, Ceremonial Pipe, Ceremonial Pipe bag, Drum sticks, Drum, Feathers, Sweatlodge Rocks, Lodge poles (i.e. willows), Spirit or flag poles, Pitchfork (with modified blunted end), Rattles, Shells, Beads, Leather, Shovel, Prayer ties, Song books, Water buckets, Buffalo horn ladle, flute, Flute bag, Containers and/or storage locations and devices to hold and protect such property, etc.
    The definition of "materials" shall mean: consumables, either personal or group, used in a religious ceremony, to include, but not limited to:

27

Firewood, Sweetgrass, Sage, Cedar(leaf), Tobacco, Water, Fire(i.e. lighter), Food (i.e. the caloric equivilent provided to the food served in the dining hall), etc.
The definition of "locate" shall mean: searching for vendors who can provide these items and materials and searching for people or organizations who can donate these items and materials.
The definition of "give access" shall mean: that a monthly updated list of vendors, people and organizations will be given to the Native American Community within CDOC upon request. The list shall include the name of the vendor--person--or organization, phone numbers, address, website, email and any other information needed to make contact with them. The list shall also include a brief description of what items, materials and services they provide.
The definition of "regular basis" shall mean: once a calendar month. (i.e. twelve times a year). Documentation will be made to show CDOC is diligently seaching for vendors, people and organizations.

g. The department shall include in AR Form 800-01K, these provisions and definitions and terms and include the definition of "Native American" and/or "American Indian" and/or "Indigenous Person" to mean: an individual of aboriginal ancestry who is a member of a tribe recognized by a verifiable government or governmental agancy.

h. The department shall include in AR Form 800-01K, the definition of "Native American religious" and/or"American Indian religious" and/or "Indigenous Person religious" practices to mean: any religion which is practiced by persons whose ancestry comes from the Americas (i.e. North or South), and the origin and interpretation of which is from a traditional Native culture or community.

NOMINAL DAMAGES:

If the Court determines that any of Eaves, Maes, Bandy, or Roebuck's rights were violated, an award of $1.00 is to be given to the Plaintiff whose rights have been found to be violated.

COMPENSATION DAMAGES:

Plaintiff--Rodney Eaves--against Defendants in their individual capacities ONLY:

Anthony Russell, $100,000;
Myra Chubbuck, $100,000;
Leah DeFord, $100,000;
Gynetta Rynek, $100,000;
Jose Ruiz, $100,000;
Marshall Griffith, $100,000;
Lamar Richardson, $100,000;
Benjerman Valdez, $100,000;
Julie Russell, $100,000;
Carlos G. Rodriguez-Gonzalez, $500,000; and
Johanna Kennedy, $100,000.

28

Plaintiff-- Edward Maes--against Defendants in their individual capacities ONLY:

Jose Ruiz, $20,000;
Lamar Richardson, $20,000; and
Marshall Griffith, $20,000.

Plaintiff--Taylor Bandy--against Defendants in their individual capacities ONLY:

Jose Ruiz, $30,000;
Lamar Richardson, $30,000; and
Marshall Griffith, $30,000.

Plaintiff--Marcellus Roebuck--against Defendants in their individual capacities ONLY:

Jose Ruiz, $25,000;
Lamar Richardson, $25,000; and
Marshall Griffith, $25,000.

PUNITIVE DAMAGES:

In the Defendants' Individual Capacities ONLY: Award the Plaintiffs Eaves, Maes, Bandy and Roebuck punitive damages for the Defendants' conduct and to deter them and others from committing similar acts in the future in the following amounts:

For Eaves:
Anthony Russell, $10,000;
Myra Chubbuck, $10,000;
Leah DeFord, $10,000;
Gynetta Rynek, $10,000;
Jose Ruiz, $30,000;
Marshall Griffith, $80,000;
Lamar Richardson, $80,000;
Benjerman Valdez, $10,000;
Julie Russell, $20,000;
Carlos G. Rodriguez-Gonzalez, $100,000; and
Johanna Kennedy, $10,000.

For Maes:
Jose Ruiz, $2,000;
Lamar Richardson, $5,000; and
Marshall Griffith, $5,000.

For Bandy:
Jose Ruiz, $2,000;
Lamar Richardson, $5,000; and
Marshall Griffith, $5,000.

For Roebuck:
Jose Ruiz, $2,000;
Lamar Richardson, $5,000; and
Marshall Griffith, $5,000.

OTHER RELIEF:

Any other relief this Court may deem just and proper.

A trial by jury is hereby demanded on all claims by all Plaintiffs and those certified in Class alleged herein, and the parties are hereby given notice, pursuant to Fed. R. Civ. P. 38(a)-(c).

H.    PLAINTIFF'S SIGNATURE (Continued)

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. See 28 U.S.C. §1746; 18 U.S.C. §1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Plaintiff Edward Maes _Edware Maes_    Date _2-15-26_

Plaintiff Taylor Bandy _____    Date _2-15-26_

Plaintiff Marcellous Roebuck _Marcellous Roebuck_    Date _2-13-2026_

30



**COLORADO**

Department of Corrections

EXHIBIT #1

Pg 1 of 1

Faith and Citizen Programs
1250 Academy Park Loop
Colorado Springs, CO 80910
P 719.226.4291

## MEMORANDUM

Date:       June 21, 2023

To:         Rodney Eaves #173190
            Bent County Correctional Facility

From:       Kerri Delarosa, Liaison V  *K Delo Rosa*
            CDOC Faith and Citizen Program Administrator

Subject:    Request for Religious Accommodations - Eagle Feathers as Religious Headwear

---

It has come to my attention through your recent filing of the Motion to Issue a "TRO" in the in the Rodney Douglas Eaves v. Jared Polis, et al., No. 21-cv-1219 (D. Colo.), case that you seek approval to wear eagle feathers as religious headwear outside of your cell and outside of religious ceremonies pursuant to your sincerely held religious beliefs as a member of the Sac & Fox Nation of Stroud, Oklahoma.

I understand that you previously submitted a written request to wear eagle feathers on your head for religious purposes but that the written request did not contain information regarding your Sac & Fox religion and did not contain sufficient detail regarding the type of headwear or amount of eagle feathers to be worn. It is my understanding that your request was at that time denied in the absence of this information.

However, the additional information that you have provided in connection with your Motion to Issue a "TRO," as well as your supporting affidavits and pictures of you at Bent County Correctional Facility ("BCCF") that depict you wearing approximately three (3) eagle feathers, have been conveyed to me, and I have evaluated your request for approval to wear eagle feathers as religious headwear in light of this additional information. In view of the same, I have determined that your request is GRANTED as stated in this Memorandum.

You will be granted an allowance to wear the eagle feathers in your possession outside of your cell and when religious ceremonies are not being conducted as religious headwear, consistent with your sincerely held Sac & Fox faith beliefs with the same allowances as stated in CDOC's Administrative Regulations ("AR") 800-01(IV)(R)(8) and 800-01(IV)(R)(10).

For the purposes of this allowance, "eagle feathers" shall mean the eagle feathers in your possession as religious headwear, as permitted to be in your possession pursuant to AR Form 800-01G, AR Form 800-01K(E), the Bald and Gold Eagle Protection Act (16 U.S.C. §§ 668 et seq.) and accompanying regulations (e.g., 50 C.F.R. § 22.60), and any other applicable federal law. You will be allowed to wear no more than six (6) eagle feathers at a time as religious headwear.

You will be allowed to keep a copy of this Memorandum in your cell as part of your personal property.

Jared Polis, Governor | Moses "Andre" Stancil, Executive Director



| CHAPTER | SUBJECT | AR # | Page 10 |
|---|---|---|---|
| Offender Pastoral Care | Religious Programs, Services, Clergy, Faith Group Representatives, and Practices | 800-01 | EFFECTIVE 06/22/23 |

1. Conform to AR 850-06, *Offender Property*.

2. Personal faith property is available through Canteen, donation or an approved vendor. *[2-CO-5E-01]* A list of DOC recognized vendors will be maintained by Faith and Citizen Programs and only the ite[...] **EXHIBIT #2** [...]-01G, Allowable Personal Faith Group Property may be purchased. Stamps are not an a[...] to purchase faith items.

3. The facility volunteer coordinator or designee, will approve all outside purchases t[...] **Pg 1 of 1** [...] appropriate security guidelines. All items purchased from an outside vendor will be consistent with Canteen items in color, size, shape, adornment, etc. Outside purchases will be made available when the approved items listed on AR Form 800-01G, Allowable Personal Faith Group Property are not available from the Canteen. If an approved item is not available from an approved vendor, it may be purchased from an approved source of supply. Books, literature, and other publications may be purchased from an approved source of supply, in accordance with AR 300-38, *Offender Mail* and AR 850-06, *Offender Property*.

4. The offender will be brought into property compliance pursuant to AR 850-06, *Offender Property*.

5. Be stored in the offender's cell. Personal faith items will be stored in a clear plastic box available from canteen or a clear plastic or a paper bag issued by the facility. This container will be clearly marked "faith property items." The items will be included on the offender property list (see AR 850-06, *Offender Property*).

6. Be limited to that which fits within the faith property container. Exceptions: Approved personal faith property items that are too large in size, including prayer rug/meditation cushion/etc., which must be stored on, under, or next to faith property container. Additional personal faith item storage exceptions must be requested, in writing, by the offender to the Faith and Citizen Programs Administrator. Approval or denial must be in writing and maintained by the offender. Approval or denial will be based on space available and facility security. Personal tefillin will be stored in living unit control center.

7. Be worn, displayed, or used only in the offender's cell, or during authorized faith group programs. When items are not in use, they must be stored in the faith items box. Personal faith property will not be displayed or used in general population.

   **EXCEPTIONS:**

   a. Medicine bags, medallions, and the "Tallit Katan" may be worn under the clothing, but will not be displayed in the general population.

   b. Prayer beads and rosaries may be carried in a pocket.

8. Religious head wear may be worn while outside of the cell and religious services. Offenders will not be required to wear a baseball cap or a stocking cap over their religious headwear.

9. Be reviewed for appropriateness at each security level, and be subject to approval by either the administrative head/designee, in consultation with the Faith and Citizen Programs Administrator, or the facility chaplain who will inform the Faith and Citizen Programs Administrator . If approved personal faith property is restricted, a report will be submitted annually to Faith and Citizen Programs detailing the compelling governmental interests for the restriction and if a less restrictive alternative would be appropriate.

10. Jewish, Muslim, Messianic Believer, Native Americans, and offenders of other religious faiths as mandated by faith tenet, will be allowed to wear the "Yarmulke" (skull cap), the kufi (Islamic religious headwear), the "Tallit Katan" (worn under the clothing), approved eagle feathers (in accordance with applicable laws and regulations, including this AR, regarding the possession of eagle feathers), or other religious headwear including while being transported



EXHIBIT #3

Pg 1 of 1

**S     NOTES:**
Client was not in their cell at the time of this RH round.

**O     NOTES:** None

**A     NOTES:** None

**P     NOTES:** None

**E     NOTES:** None

**Health Scores:**     **M:** 2(P)     **D:** 4     **P:** 1     **S:** 1     **SA:** 3     **ID:** 1     **SUD:** 3

**STAFF:** GUENZI, MIKAYLA N   Behavioral Health

**DOC #:** 173190   **Inmate Name:** EAVES, RODNEY D.

**ENCOUNTER DATE:** 06/07/2024   **TIME:** 02:12:48 PM   **DURATION:** minutes   **TYPE:** Hunger Strike - Nursing

**LOCATION:** Sterling Correctional Facility   **SETTING:** Health Services Clinic

**S     NOTES:**
Hunger strike protocol

**O     CURR:** 02:12:48 PM   **TEMP:** 98.1   **PULSE:** 53   **RP:** 16   **BP:** 139/95   **HT:** 5 ft.   9 in.   **WT:** 213 lb   **BLOOD SUGAR:** NA

   **02 SAT:** 96 % **SOURCE:** Room Air

**SCANNED DOCUMENT/PHOTO TYPE:** Medical Records   **TITLE:** SCF Hunger Strike Protocol

**NOTES:** Offender ambulated independently to RH medical room in handcuff accompanied by two CO. Offender is not in acute distress. Offender is A&O x4 . Offender stated that he stopped eating yesterday (06/05/2024 ) evening when he was moved to RH. Offender stated he did not eat or drink at all today. Offender stated that he was on strike because of religious persecution. Resp even non labored. Speech clear and coherent. Color normal for ethnicity. On assessment, offender denies any concerns with bowel or bladder, skin turgor brisk, mucus membranes moist. Offender was unable to provide urine sample at the time of this assessment but was given sample cup and stated he would try.
Date Meals Drinking Participating
6/6/24 0/3 No Yes.
6/7/24 0/3 unknown yes

**A     NOTES:**
hunger strike protocol

**P     NOTES:**
cont. to monitor

**CoreCivic-Eaves 021**



**COLORADO**
Department of Corrections

**E    NOTES:**
educated on the dangers of not eating and drinking

**Health Scores:**    **M:** 2(P)    **D:** 4    **P:** 1    **S:** 1    **SA:** 3    **ID:** 1    **SUD:** 3

**REVIEW NOTES:**
- seen by RN Copeland (06.12.24) pt reported he has been eating for the last 3 days; was only on hunger strike due to being in RH

**STAFF:** ADKINS, CYNTHIA Y   Nurse

**NURSE SIGNATURE:** _____

**DOC #:** 173190    **Inmate Name:** EAVES, RODNEY D.

**ENCOUNTER DATE:** 06/06/2024   **TIME:** 09:25:13 PM   **DURATION:** minutes    **TYPE:** Hunger Strike - Nursing

**LOCATION:** Sterling Correctional Facility   **SETTING:** Health Services Clinic

**S    NOTES:**
Hunger Strike Protocol

**O    CURR:** 09:25:13 PM  **TEMP:** 98.3  **PULSE:** 60  **RP:** 18  **BP:** 148/87  **HT:** 5 ft.  9 in.  **WT:** 0  **BLOOD SUGAR:** NA

**02 SAT:** 0 % **SOURCE:**

**CURR:** 09:25:13 PM  **TEMP:** 98.3  **PULSE:** 60  **RP:** 18  **BP:** 143/94  **HT:** 5 ft.  9 in.  **WT:** 0  **BLOOD SUGAR:** NA

**02 SAT:** 0 % **SOURCE:**

**CURR:** 09:25:13 PM  **TEMP:** 98.3  **PULSE:** 60  **RP:** 18  **BP:** 147/98  **HT:** 5 ft.  9 in.  **WT:** 0  **BLOOD SUGAR:** NA

**02 SAT:** 0 % **SOURCE:**

**SCANNED DOCUMENT/PHOTO TYPE:** Medical Records   **TITLE:** SCF Hunger Strike Protocol

**NOTES:**
Offender is not in acute distress

**A    NOTES:**
Offender ambulated independently to RH medical room in handcuff accompanied by two CO. Offender is not in acute distress. Offender is A&O x4 and able to express needs. Offender stated that he stopped eating yesterday (06/05/2024 ) evening when he was moved to RH. Offender stated he did not eat or drink at all today. Hunger Strike Assessment completed. Respirations even non labored. Speech clear and coherent. Color normal for ethnicity. On assessment, offender denies any concerns with bowel or bladder, skin turgor brisk, mucus membranes moist. Offender was unable to provide urine sample at the time of this assessment.

Date Meals Drinking Participating

6/6/24 0/3 No Yes.

**CoreCivic-Eaves 022**

# EXHIBIT # 4



$12.<u>80</u>

# EXHIBIT #5



$14.$\frac{35}{}$



EXHIBIT #6

Pg 1 of 1

AR Form 800-01J (06/22/23)



# COLORADO
**Department of Corrections**

## ESTABLISHING NEW OR AMENDING CURRENT FAITH GROUP PRACTICES

**Instructions:** Please print or type all information in black or blue ink. Illegible/incomplete requests will not be considered. Use only the space provided. **No additional pages may be used or attached. Only one request per form will be considered and addressed.**

A.  Offender Name _Taylor Bandy_      DOC # _166798_      Facility _SCF_

PCDCIS-Listed Faith Affiliation: _____      Unit: _1 A_

B.  Yes or No: Are you requesting to establish a new religion/faith group that is not currently recognized by DOC? _No_

C.  If yes in section B, state the religion that you are requesting to be recognized. If no, what faith practice would you like to change or add? _I WOULD LIKE TO IMPLEMENT OUR AMERICAN INDIAN FAITH GROUP BE ALLOWED TO ORDER APPROVED HERBS/ITEMS THAT ARE SACRED TO US BY APPROVED AMERICAN INDIAN VENDORS._

D.  If yes in section B, identify basic tenets or teachings associated with the faith group. If no, provide a source, reference, or documentation which supports and shows the significance of this requested change to current practice. Listing the first amendment, or stating the understanding of it does not constitute a source. _THERE ARE SEVERAL ALREADY PRE-EXISTING VENDORS FOR THE AMERICAN INDIAN FAITH GROUP THAT GROW/HANDLE/ & DISTRIBUTE THESE HERBS IN A SACRED WAY BY AMERICAN INDIAN LAKOTA PEOPLE IN RESPECTS TO THE U.S. CONSTITUTION PROTECTING OUR TRADITIONS AS DOES A JEWISH RABBI BLESSED A KOSHER FOOD ITEM. THE CENTRAL CANTEEN VENDOR DOES NOT GUARENTEE THAT RESPECT AS WELL AS CANTEEN PURCHASED ITEMS ARE FOR INDIVIDUAL USE NOT ~~GROUP~~ GROUP PER A.R. VENDORS THAT ARE AUTHENTIC FOR AMERICAN INDIAN LAKOTA PEOPLE INCLUDE:_

_ADDRESS: SIOUX TRADING POST_
_606 MAIN ST._
_RAPID CITY, SD 57701_
_PHONE: 800-341-2388_
_EMAIL: SIOUXTRADING.COM_

_ADDRESS: CRAZY CROW TRADING POST_
_PO BOX 847_
_POTTSBORO, TX. 75076_
_PHONE: 800-786-2287_
_EMAIL: CRAZYCROW.COM_

E.  If yes in section B, identify any recognized governing body associated with the faith group. Provide a name, address, and phone number, if known.
    _N/A_

F.  If yes in section B, identify any documentation (books, literature, etc.) associated or referenced with this faith group.
    _N/A_

Offender Signature _[signature]_                                          Date Submitted _____

Facility Volunteer Coordinator - Print/Sign _____      Date Forwarded _____

Response CC: Faith and Citizen Programs   Offender
            Facility Volunteer Coordinator

Attachment J
Page 1 of 1



**COLORADO**
**Department of Corrections**

Faith & Citizen Programs
1250 Academy Park Loop
Colorado Springs, Co 80910

EXHIBIT #7

Pg 1 of 1

# MEMORANDUM

**DATE:**    10/01/2025

**TO:**    Offender Bandy, Taylor 166798 SCF

**FROM:**    Lamar Richardson
Regional Volunteer Program Coordinator

**RE:**    Submission of AR form 800-01-J
ID # 1341

---

Offender Bandy,

I am in receipt of your request, dated 9/07/2025, to amend faith group practices for the American Indian Faith Group. You are requesting to purchase items listed on Canteen from an outside approved vendor.

I have researched your request. This included, but was not limited to, some or all of the following sources: consultation with faith group advisors, Colorado Department of Corrections (CDOC) staff, applicable literature, CDOC policy, time, space, and security issues. After a thorough review of the information obtained, the following has been determined:

The office of Faith and Citizen Programs has listed Crazy Crow and Sioux Trading Post as approved vendors. Outside purchases will be made available when the approved items listed on AR Form 800-01G, Allowable Personal Faith Group Property, are not available from the Canteen. If an approved item is not available from an approved vendor, it may be purchased from an approved source of supply.

AR 200-01 Business Services Procedures M. 14. states: Items or their equivalent sold by Canteen Services may not be ordered by offenders from other sources, including but not limited to outside vendors, Faith and Citizens programs, and facility recreation departments.

All items sold through Canteen Services must be purchased through Canteen Services and cannot be purchased from an outside source. The Department of Corrections has a compelling governmental interest to maintain security, control, consistency, and limit potential avenues of contraband introduction.

Colorado uses a bidding process to acquire items provided through Canteen Services. The lowest qualifying bid is awarded the contract. Any company can participate in the bidding process.

The office of Faith and Citizen Programs has determined that your request is **denied.**

Thank you
*Richardson Lamar*
Faith and Citizen Programs



Jared Polis, Governor |Moses Andre Stancil, Executive Director

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Keefe | SACRED PATH CARDS | SACRED PATH CARDS, DISCOVERY OF SELF | 1 | EACH | 1 | $43.82 | $43.82 | | $0.00 | $59.22 | $59.22 | 1 | 5042801099 |
| Battery Operated Candles | | Tea Light | 1 | EACH | 1 | $0.96 | $0.96 | | $0.00 | $1.30 | $1.30 | SS | 330 |
| Keefe | AZURE GREEN | JASMINE FLOWERS | 1 | OZ | 1 | $4.42 | $4.42 | | $0.00 | $5.97 | $5.97 | 1 | 8036901099 |
| Keefe | CHERYL'S HERBS | LAVENDER | 1 | OZ | 1 | $7.60 | $7.60 | | $0.00 | $10.27 | $10.27 | 1 | 8700701099 |
| Keefe | COLLEEN'S GARDENS | SWEETGRASS BRAID | 0.5 | OZ | 1 | $10.62 | $10.62 | | $0.00 | $14.35 | $14.35 | 1 | 8701002099 |
| Keefe | COLLEEN'S GARDENS | SAGE | 0.5 | OZ | 1 | $4.93 | $4.93 | | $0.00 | $6.66 | $6.66 | 1 | 8700901099 |
| Keefe | COLLEEN'S GARDENS | SAGE, BUNCH | 1 | EACH | 1 | $9.47 | $9.47 | | $0.00 | $12.80 | $12.80 | 1 | 8700902099 |
| Keefe | COLLEEN'S GARDENS | BEAR ROOT | 0.5 | OZ | 1 | $25.89 | $25.89 | | $0.00 | $34.99 | $34.99 | SS | 8701503099 |
| Keefe | COLLEEN'S GARDENS | BITTER ROOT | | | | | | $10.08 | $10.08 | $0.00 | | | |
| Walkenhorst | SAN FRANCISCO SALT CO. | SEA SALT, MEDITERRANEAN, FINE GRAIN | 2 | OZ | 1 | $1.15 | $1.15 | | $0.00 | $1.55 | $1.55 | 1 | |
| Jenny | Al Risala Forum International | The Qur'an | 1 | EACH | 10 | $30.00 | $3.00 | | $0.00 | $4.05 | $4.05 | 1 | WKH65310 |
| Union | B&N | TORAH | 1 | EACH | 1 | $26.36 | $26.36 | | $0.00 | $35.62 | $35.62 | 1 | 6599942 |
| Union | CHRISTIAN BOOK INC | POCKET KING JAMES BIBLE | 1 | EACH | 1 | $6.47 | $6.47 | | $0.00 | $8.74 | $8.74 | 1 | 6599970 |

22  Minnesota St.

Marvin, S.D. 57251

EXHIBIT #8

Pg 1 of 3

| VENDOR | MANUFACTURER | DESCRIPTION | UNITS OR SIZE | UOM | CASE COUNT | CASE COST | INDIVIDUAL COST | DCIS PRICE DIFFERENCE | DCIS OFFENDER PRICE | EXPECTED OFFENDER PRICE | RANK | VENDOR'S ITEM/STOCK # |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| CI Tag Plant | | Allah Pendant | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 100 |
| CI Tag Plant | | Buddhist Medallion | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 103 |
| CI Tag Plant | | Star of David | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 105 |
| CI Tag Plant | | Khanda | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 108 |
| CI Tag Plant | | Crucifix | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 110 |
| CI Tag Plant | | Cross | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 115 |
| CI Tag Plant | | Lion of Judah Medallion | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 118 |
| CI Tag Plant | | Messanic Star | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 120 |
| CI Tag Plant | | Flaming Chalice | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 123 |
| CI Tag Plant | | Pentagram | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 125 |
| CI Tag Plant | | Basphomet Medallion | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | 1 | 128 |
| CI Tag Plant | | Thor's Hammer | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | SS | 130 |
| CI Tag Plant | | Ankh | | EACH | 1 | $21.50 | $21.50 | $0.00 | $29.05 | $29.05 | SS | 132 |
| Espoir | BAREKET | 20" SILVER CHAIN, STYLE #1818 | 1 | EACH | 1 | $20.41 | $20.41 | $0.00 | $27.58 | $27.58 | 1 | 136 |
| Espoir | BAREKET | 24" SILVER CHAIN, STYLE #1819 | 1 | EACH | 1 | $24.72 | $24.72 | $0.00 | $33.41 | $33.41 | 1 | 137 |
| Jenny | Sterilite | 6qt Mini Storage Box, 13.5" X 8.25" X 4.75" | 1 | EACH | 12 | $30.12 | $2.51 | $0.00 | $3.39 | $3.39 | 1 | WKH16428 |
| Union | HALALCO | SCARF WHITE 44"X 44" | 1 | EACH | 1 | $11.38 | $11.38 | $0.00 | $15.38 | $15.38 | 1 | 6070031 |
| Keefe | CRESCENT IMPORTS & PUBLICATIONS | MEN'S KUFI CAP, CROCHET, BLACK | 1 | EACH | 1 | $7.21 | $7.21 | $0.00 | $9.74 | $9.74 | 1 | 5073302004 |
| Keefe | CRESCENT IMPORTS & PUBLICATIONS | KUFI CAP, CROCHET, WHITE | 1 | EACH | 1 | $6.83 | $6.83 | $0.00 | $9.23 | $9.23 | 1 | 5073302001 |
| Keefe | ROSE SOLOMON CO | MEN'S SKULL CAP, YARMULKE, UNLINED, WHITE | 1 | EACH | 1 | $0.72 | $0.72 | $0.00 | $0.97 | $0.97 | 1 | 8703601001 |
| Keefe | ROSE SOLOMON CO | MEN'S SKULL CAP, YARMULKE, UNLINED, BLACK | 1 | EACH | 1 | $0.72 | $0.72 | $0.00 | $0.97 | $0.97 | 1 | 8703601004 |
| Jenny | CAROLINA MFG | White Blank Bandana, 22" x 22", 100% Cotton | 1 | EACH | 12 | $18.96 | $1.58 | $0.00 | $2.14 | $2.14 | 1 | WKH00011 |
| Keefe | HALALCO BOOKS | TURKISH PRAYER RUG, 48 IN X 27 IN, VARIOUS COLORS | 1 | EACH | 1 | $14.34 | $14.34 | $0.00 | $19.38 | $19.38 | 1 | 8705504099 |
| Union | CENTRALIA FUR & HIDE | MEDICINE BAG | 1 | EACH | 1 | $6.71 | $6.71 | $0.00 | $9.07 | $9.07 | 1 | 6070014 |
| Keefe | 13 MOONS, LLC | ALTAR CLOTH, 24 IN X 24 IN, WHITE | 1 | EACH | 1 | $25.51 | $25.51 | $0.00 | $34.47 | $34.47 | 1 | 8708201001 |
| Union | U.S GAMES SYSTEMS | TAROT CARDS ILLUSTRATED BY MARY HANSON-ROBERTS, 78 CARDS, ISBN-10: 0880790792 | 1 | EACH | 1 | $19.66 | $19.66 | $0.00 | $26.57 | $26.57 | 1 | 6070105 |

TO: Colleen's Gardens
    c/o: Customer Service
    22 Minnesota St.
    Marvin, SD. 57251

From: Rodney Eaves, DOC #173190
      PO Box 6000
      Steling, CO. 80751

Date: July 16, 2025

RE: Fake Sweetgrass

Salutations Customer Service,

It has come to my attention that your product labled "Cheryl's Herbs-Sweetgrass-Heirochole odorata" is in fact not sweetgrass. I am a registered member of the Sac & Fox Nation in Stroud, Oklahoma. I have practiced the Native American way of life now for 35-years and when I received your product through your vendor, Keefe, I was suspicious that this product was not sweetgrass as in all my experiance I've never seen sweetgrass that looked like your sweetgrass.

I have purchased your product seven times now at a cost of $14.35 per package. I have six unopened packages as I sent one to be verified it was not sweetgrass. After having it tested, it came back as Medicago Sativa, which is not sweetgrass. I still have the unopened packages and all my receipts. The sale of this product to me is a violation of Colorado's Consumer Protection Act or "CCPA" §6-1-105(1)(g) of Colorado's Revised Statues. You can be fined upto $250.00 per violation.

Resolution: I will not report this infraction to the Colorado Attorney General if you remove this product from your vendor Keefe and reimburse my costs of $100.45. Please send a money order or cashier's check made out to the following: Inmate Banking-Rodney Eaves #173190, P.O. Box 230, Canon City, CO. 81215, for the amount of $100.45.

Thank you for your attention in this matter.

Respectfully,
Rodney Eaves



EXHIBIT#9

Pg 1 of 6

MR. RODNEY EAVES, # 173190
P.O. BOX 6000
STERLING CO 8075/

Chet or Colleen Cordell
Colleen's Gardens &
Native American Products
PO Box 68
Marvin SD 57251-0068

C311

# EXHIBIT #9



$12.80                                    $6.95

EXHIBIT #9



$14.$^{35}$    $5.$^{95}$

# ✉ Rapid Memo

**Chet or Colleen Cordell**
Colleen's Gardens &
Native American Products
PO Box 68
Marvin SD 57251-0068

To: MR RODNEY EAVES, # 173190
P.O. Bx 6000
STERLING CO 80751

Date: 07/25/2025
Subject: letter from you arriving 07/24/2025

○ Confidential      ○ High Priority      ○ Proprietary      ○ Shred

MR EAVES,    Will get right to the chase — The last time "Colleen's Gardens & Native American Products" shipped a Native American prayer herb order to the Keefe company was on 01/06/2021, over 4.5 years ago. This company no longer is doing business with Keefe. It is unfortunate that who ever is offering sweet grass to you — is using our past association with Keefe as a current supplier. Some where along the line you have been mislead. You would need to take your complaint to "Cheryl's Herbs - Sweetgrass" that you mentioned in your letter. You are being written to by a 68 year old Sisseten-Wahpeton enrolled tribal member. Please do not disrespect me again with inaccurate information. (C.C)

A-SC1158/T-4151                                                11-12

# COLLEEN'S GARDENS & NATIVE AMERICAN PRODUCTS

**P.O. BOX 68**

**22 S Minnesota St**     *Issued: 09/02/2025*     (C.C.)

**MARVIN, SD 57251-0068     Phone: 605-398-6923;     Fax: 605-398-6932;**

**e-mail: colleen@indiangifts.com**

**Customer Ship to Address:**

_____

_____

_____

_____

**Arizona Chaplain's Approval:**

Name:

Date:_____

X:_____

| Item Description | Quantity | Unit Price | Total |
|---|---|---|---|
| (1) oz Traditional Northern Plains Sage | | $8.00 / pkg. | |
| (1) oz California White Sage | | $4.00 / pkg. | |
| (1) oz Traditional Flat Cedar | | $4.00 / pkg. | |
| (1) oz N. Plains Sage wrapped smudging wand/stick | | $6.00 ea | |
| (1) oz N. Plains Sage & Sweet Grass smudging stick | | $9.00 ea | |
| (1) oz Calif. White Sage wrapped smudging wand/stick | | $7.00 ea | |
| (1) oz Sweet Grass Braid | | $4.00 / braid | |
| (1) oz Tobacco Mix- Navajo Mountain Smoke; Consisting of: Mountain Mix, Lavender, Bird's Eye, & Spearmint. | | $5.00 ea | |
| (1) oz Colleen's Gardens Tobacco Mix; Consisting of: Bear Berry, Cansasa, Mullein, Bear Root, Peppermint, and Yerba Santa. | | $5.00 ea | |
| (1) oz Northern Plains Cansasa Tobacco Mix; Made from Traditional Northern Plains Red Willow; | | $5.00 ea | |
| Natural Wild Turkey Tail Feather | | $5.00 ea | |
| Medium Abalone Shell (4" X 6" maximum size) | | $10.00 ea | |
| Small Abalone Shell | | $5.00 ea | |

**Sub-Total =**

**Over Please**                                        **Page # 1**

**Subtotal from** $_____
**Page #1** =

| Item Description | Quantity | Unit Price | Total |
|---|---|---|---|
| Paisley Design Bandanna; indicate color(s) needed:<br>____Red          ____Black<br>____Dark Blue     ____Light Sky Blue<br>____Light Yellow  ____Maize Yellow<br>____White         ____Dark Green<br>____Turquoise                    Total # = | | $4.00 ea | |
| Medicine Bag: smoked, brain tanned Deer leather, with hand braided neck strap. Approx. 2.5" long x 2" wide | | $25.00 ea | |
| Corn Husks— one ounce package | | $4.oo ea | |
| SUB-TOTAL = | | | |
| Minimum Shipping Fees = $15.00- If postage rates increase, our minimum fee will also need to increase.<br>(this includes the fee for a signature of the person accepting the package of the above ordered items arriving at your local Post Office)<br>Orders over $75.00, Multiply by 20% | | | |
| SHIPPING AND HANDLING = | | | |
| TOTAL AMOUNT DUE = | | | |

**Prices effective beginning December of calendar year 2024, and are subject to change without advanced notification.   C.C.**

**Page # 2.**

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:** 1 **of** 10
**PROCESSED:** 10/13/2025 08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

**FACILITY:** SCF-General Population CLOSE

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inside Prison Fence** | | | | | | | | | | | | | | | | | | | |
| **Drug & Alcohol** | | | | | | | | | | | | | | | | | | | |
| CLOSE MAT | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 14 | 13 |
| **Education** | | | | | | | | | | | | | | | | | | | |
| General Education Diploma (GED | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 1 | 1 |
| SLN 1 Acceleron | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 10 | 10 |
| General Education Diploma (GED | 1* | 25% | 0* | 0% | 2* | 50% | 1* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 5 | 1 |
| General Education Diploma(GED) | 1* | 33% | 1* | 33% | 1 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 8 | 5 |
| **Facility Work Assignment** | | | | | | | | | | | | | | | | | | | |
| LAUNDRY (I-POD ONLY) | 4* | 67% | 1 | 17% | 1* | 17% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 12 | 6 |
| LU 2 A POD PORTER | 2 | 40% | 3* | 60% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 6 | 1 |
| N PLUMBING FT | 2* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 3 | 1 |
| NS BARBERS (I-POD OFF) | 1* | 25% | 1 | 25% | 2* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 5 | 1 |
| NS-CHAPLAIN OFFICE | 4* | 67% | 1 | 17% | 1* | 17% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 10 | 4 |
| T HOBBY SHOP SELF EMPLOYED | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 15 | 13 |
| T LAW LIBRARY | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 2 | 2 |
| T LIBRARY | 3* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 6 | 3 |
| T RECEIVING HALLWAY | 2* | 67% | 1* | 33% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 4 | 1 |
| T VISITING | 4* | 67% | 0* | 0% | 1* | 17% | 0 | 0% | 1* | 17% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 8 | 2 |
| TN/TS LU 6 CUSTODIANS | 3* | 33% | 1* | 11% | 5* | 56% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 9 | 12 | 3 |
| TN/TS-HUBB CORRIDOR | 0* | 0% | 1 | 17% | 4* | 67% | 1* | 17% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 6 | 0 |
| TS ELECTRICAL FT | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| TS LABOR 6 BB | 4* | 80% | 1 | 20% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 20 | 15 |
| EAST BACK DOCK | 3* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | | |
| LU 2 B POD PORTER | 0* | 0% | 1 | 20% | 4* | 80% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | | |
| NS LAW LIBRARY | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | | |
| S PLUMBING FT | 2* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | | |
| T CHAPLAIN'S OFFICE | 1* | 33% | 1* | 33% | 1 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | | |
| T FS 5AM-9AM HT | 5* | 36% | 0* | 0% | 8* | 57% | 1 | 7% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 14 | | |
| T-LIBRARY AM | 3* | 75% | 1 | 25% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | | |
| TN ELECTRICAL FT | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| TN/TS BARBERS | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 6 | 4 |
| TS PHY PLT BB | 2* | 67% | 1* | 33% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 10 | 7 |

Pg 1 of 10 EXHIBIT #10

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 50 of 61

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:** 2 **of** 10
**PROCESSED:** 10/13/2025 08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

**FACILITY:** SCF-General Population CLOSE

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TS TRADES | 1* | 50% | 0* | 0% | 0* | 0% | 0 | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 2 | 0 |
| LU 2 C POD PORTER | 3* | 60% | 0* | 0% | 1* | 20% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 6 | 1 |
| NS RECEIVING AM | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1 | 0 |
| S ELECTRICAL FT | 1* | 50% | 1* | 50% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 2 | 0 |
| T PLUMBING FT | 4* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 6 | 2 |
| T-LIBRARY PM | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 7 | 5 |
| TN/TS EDUC HSKEEP | 4* | 33% | 2 | 17% | 6* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 12 | 15 | 3 |
| LU 2 CORE PORTER PM | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| N ELECTRICAL FT | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| NS HUBB CORRIDOR2 | 6* | 75% | 0* | 0% | 1* | 13% | 1* | 13% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 8 | 0 |
| NS LIBRARY AM | 5* | 63% | 3* | 38% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 10 | 2 |
| LU 2 CORE PORTER AM | 0* | 0% | 1* | 50% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 2 | 0 |
| LU 4 A POD | 1* | 33% | 2* | 67% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 5 | 2 |
| NS LIBRARY PM | 6* | 86% | 1* | 14% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 10 | 3 |
| NS-LIBR HSKEEP AM | 2* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 2 | 0 |
| T GRNDS SPCL ASSIGNMENT | 3* | 60% | 1 | 20% | 0* | 0% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 6 | 1 |
| LU 4 B POD | 1* | 50% | 1* | 50% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 5 | 3 |
| LU 4 BARBERS | 0* | 0% | 0* | 0% | 2* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| LU 4 C POD | 0* | 0% | 0* | 0% | 1* | 50% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 5 | 3 |
| WEST LIBRARY FT | 3* | 60% | 1 | 20% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 6 | 1 |
| LU 4 LIBRARY CLERKS | 1* | 50% | 1* | 50% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| LU 4 UNIT PORTERS | 2 | 40% | 2* | 40% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 6 | 1 |
| NS RECREATION MURAL | 4* | 50% | 1* | 13% | 3* | 38% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 11 | 3 |
| CLOSE RECREATION | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 6 | 6 |
| *Peer Programs* | | | | | | | | | | | | | | | | | | | |
| EDU - 7 HABITS | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| BH - NON-VIOLENT COMMUNICATION | 3* | 30% | 3* | 30% | 4* | 40% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 10 | 14 | 4 |
| EDU - 7 HABITS | 7* | 54% | 3 | 23% | 3* | 23% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 13 | 15 | 2 |
| BH - NON-VIOLENT COMMUNICATION | 0* | 0% | 9* | 75% | 2* | 17% | 1 | 8% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 12 | 14 | 2 |
| *Social Science Education* | | | | | | | | | | | | | | | | | | | |
| Why Try 7.1 | 2* | 25% | 3* | 38% | 3* | 38% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 12 | 4 |
| **ASSIGNMENT TOTALS** | 118 | 47% | 54 | 21% | 71 | 28% | 8 | 3% | 2 | 1% | 0 | 0% | 0 | 0% | 0 | 0% | 253 | 435 | 182 |

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 51 of 61

CO DOC
REPORT NO. IJPR301 - 44

INMATE ASSIGNMENT QUOTA BY LOCATION

PAGE: 3 of 10
PROCESSED: 10/13/2025 08:08 AM
REQUESTOR: MICHELLE L YOUNGBLOO

FACILITY: SCF-General Population MEDIUM-SP

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inside Prison Fence** | | | | | | | | | | | | | | | | | | | |
| *Correctional Industries* | | | | | | | | | | | | | | | | | | | |
| CANINE COMPANION | 11* | 55% | 5 | 25% | 4* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 20 | 21 | 1 |
| TS CANINE COMPANION | 5 | 38% | 3 | 23% | 5* | 38% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 13 | 20 | 7 |
| *Drug & Alcohol* | | | | | | | | | | | | | | | | | | | |
| TC PART SF | 22* | 61% | 3* | 8% | 10 | 28% | 1 | 3% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 36 | 40 | 4 |
| WEST MAT JK AM | 1* | 50% | 0* | 0% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 12 | 10 |
| WEST MAT WED | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 12 | 12 |
| *Education* | | | | | | | | | | | | | | | | | | | |
| N CANINE BEHAVIOR MODIFICATION | 5* | 50% | 2 | 20% | 3 | 30% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 10 | 21 | 11 |
| T FLAGGING VOL DIORIO | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 21 | 21 |
| Trinidad State Junior College | 11* | 61% | 1* | 6% | 6 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 18 | 45 | 27 |
| TS CANINE BEHAVIOR MODIFICATO | 4* | 50% | 2 | 25% | 2* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 21 | 13 |
| Red Rocks Community College | 3* | 60% | 1 | 20% | 0* | 0% | 0 | 0% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 7 | 2 |
| CU Denver | 18* | 55% | 8 | 24% | 5* | 15% | 2 | 6% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 33 | 41 | 8 |
| SLN 1 Acceleron | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 16 | 16 |
| T CUSTODIAL TRAINING | 4* | 33% | 2 | 17% | 6* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 12 | 16 | 4 |
| Basic Customer Service | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 20 | 20 |
| WEST ESL LAFORE | 1* | 10% | 0* | 0% | 9* | 90% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 10 | 15 | 5 |
| Intro to Computer Info Sys | 9* | 64% | 1* | 7% | 1* | 7% | 3* | 21% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 14 | 15 | 1 |
| Boarding & Pet Services | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 20 | 20 |
| Communicating/Impossible Peopl | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 9 | 9 |
| Conflict Resolution | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 9 | 9 |
| Special Topics | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 20 | 20 |
| Problem Solving | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 18 | 18 |
| Business Ethics And Values | 5* | 33% | 6* | 40% | 3* | 20% | 0 | 0% | 1* | 7% | 0 | 0% | 0 | 0% | 0 | 0% | 15 | 20 | 5 |
| Managing Business Change | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 9 | 9 |
| Managing Workplace Stress | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 9 | 9 |
| Time Management | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 9 | 9 |
| Team Building | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 9 | 9 |
| Basic Customer Service | 0* | 0% | 1* | 50% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1* | 50% | 2 | 18 | 16 |
| Boarding & Pet Services | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 21 | 21 |
| Special Topics | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 21 | 21 |

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 52 of 61

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:** 4 **of** 10
**PROCESSED:** 10/13/2025 08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

Case No. 1:26-cv-01199-RTG    Document 1    filed 03/23/26    USDC Colorado    pg 53 of 61

**FACILITY:** SCF-General Population MEDIUM-SP

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| S GED A KHARMS | 1* | 14% | 0* | 0% | 4* | 57% | 2* | 29% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 11 | 4 |
| S GED B KHARMS | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 5 | 4 |
| N GED KHARMS | 1* | 20% | 1 | 20% | 2* | 40% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 10 | 5 |
| General Education Diploma(GED) | 0* | 0% | 0* | 0% | 3* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 15 | 12 |
| *Facility Work Assignment* | | | | | | | | | | | | | | | | | | | |
| WEST RECREATION | 5 | 42% | 1* | 8% | 5* | 42% | 1 | 8% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 12 | 16 | 4 |
| LU 1 CLIN OCA | 15 | 43% | 11* | 31% | 9* | 26% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 35 | 38 | 3 |
| NS INMATE REPRESENTATIVE | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1 | 0 |
| OCA TRAINING I | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 10 | 10 |
| T LABOR CREW 4-WELDING | 3* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 6 | 3 |
| TC JOBS | 20* | 67% | 1* | 3% | 9 | 30% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 30 | 50 | 20 |
| WEST GED PARA-PROS | 4* | 67% | 1 | 17% | 1* | 17% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 10 | 4 |
| LU 2 CLIN OCA | 6 | 46% | 6* | 46% | 0* | 0% | 0 | 0% | 1* | 8% | 0 | 0% | 0 | 0% | 0 | 0% | 13 | 13 | 0 |
| OCA TRAINING II | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 10 | 10 |
| PRP PARA-PRO FLORES/ OGLEY | 0* | 0% | 2* | 100% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 2 | 0 |
| LU 3 CLIN OCA | 4* | 33% | 5* | 42% | 3* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 12 | 15 | 3 |
| OCA TRAINING III | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 10 | 10 |
| T C&C CREW | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 10 | 8 |
| TC A&D AFCARE FULL TIME | 1* | 33% | 1* | 33% | 1 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 14 | 11 |
| WEST GEN MAINT FT | 3* | 75% | 0* | 0% | 1* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 5 | 1 |
| West Kitchen Maintenance | 2* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 3 | 1 |
| LU 3 B POD PORTER | 2 | 40% | 2* | 40% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 6 | 1 |
| NS PGMS HSKEEP FT | 4* | 57% | 1* | 14% | 2 | 29% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 7 | 0 |
| SCF FLOOR POLISH CREW FT | 4* | 80% | 1 | 20% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 10 | 5 |
| EAST MAINTENANCE FT | 3* | 50% | 0* | 0% | 3* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 12 | 6 |
| LU 3 A POD PORTER | 1* | 17% | 3* | 50% | 1* | 17% | 1* | 17% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 6 | 0 |
| T CLIN OCA | 20* | 63% | 6 | 19% | 6* | 19% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 32 | 40 | 8 |
| East Kitchen Maintenance | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 3 | 2 |
| LU 3 C POD PORTER | 1* | 20% | 0* | 0% | 4* | 80% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 6 | 1 |
| LU 4 CLIN OCA | 3* | 75% | 0* | 0% | 0* | 0% | 1* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 11 | 7 |
| WEST GROUNDS MAINT | 7* | 78% | 1* | 11% | 1* | 11% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 9 | 10 | 1 |
| LU 3 CORE PORTER AM | 0* | 0% | 1* | 100% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| T INMATE REPRESENTATIVE | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 1 | 1 |

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:** 5 **of** 10
**PROCESSED:** 10/13/2025 08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

**FACILITY:** SCF-General Population MEDIUM-SP

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN, INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LU 3 CORE PORTER PM | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| PC INMATE REPRESENTATIVE | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 1 | 1 |
| LU 1 A POD | 2 | 40% | 1 | 20% | 2* | 40% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 5 | 0 |
| LU 1 B POD | 1* | 20% | 2* | 40% | 2* | 40% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 5 | 0 |
| LU 1 C POD | 2* | 50% | 1 | 25% | 1* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 5 | 1 |
| LU 1 CORE PORTERS | 0* | 0% | 1* | 50% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 2 | 0 |
| LU 1 ADA PORTERS | 5* | 56% | 2 | 22% | 2* | 22% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 9 | 9 | 0 |
| CHAPLAIN ASST. PICTURE PROGRAM | 2* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| NS CUST SRV DIPPOLITO CLERK | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| T-LIBR HSKEEP AM | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 1 | 1 |
| NS PGMS AM HSKEEP | 1* | 50% | 1* | 50% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 6 | 4 |
| NS MED FS TABLE HSKP AM | 5* | 71% | 1* | 14% | 1* | 14% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 14 | 7 |
| NS MED FS TABLE HSKP PM | 0* | 0% | 3* | 50% | 3* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 14 | 8 |
| NS MED FS TABLE HSKP EVE | 5* | 56% | 2 | 22% | 0* | 0% | 1* | 11% | 1* | 11% | 0 | 0% | 0 | 0% | 0 | 0% | 9 | 14 | 5 |
| NS HUBB CORR GRAVES PT | 0* | 0% | 2* | 67% | 1 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 4 | 1 |
| FS 3AM FT | 35 | 46% | 11* | 14% | 26 | 34% | 4 | 5% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 76 | 90 | 14 |
| FS 3PM FT | 7* | 64% | 1* | 9% | 3 | 27% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 11 | 31 | 20 |
| T FS 11AM-3PM HT | 11* | 55% | 2* | 10% | 7 | 35% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 20 | 30 | 10 |
| FS 7AM-1PM FT | 6* | 60% | 1* | 10% | 3 | 30% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 10 | 12 | 2 |
| FS 11 AM FT | 37 | 44% | 10* | 12% | 35* | 42% | 2 | 2% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 84 | 89 | 5 |
| FS 3 PM PT | 5* | 29% | 4 | 24% | 7* | 41% | 1 | 6% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 17 | 28 | 11 |
| *Mental Health* | | | | | | | | | | | | | | | | | | | |
| BH Peer Specialist | 6 | 40% | 5* | 33% | 4 | 27% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 15 | 18 | 3 |
| GENDER DYSPHORIA (SUPPORT GRP) | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 12 | 12 |
| NON VIOLENT COMMUNICATION TRNG | 0* | 0% | 1* | 100% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 6 | 5 |
| WEST MH PEER ASSISTANTS | 3* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 4 | 1 |
| BH Peer Specialist | 3 | 38% | 4* | 50% | 1* | 13% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 8 | 0 |
| EAST MH PEER ASSISTANTS | 2* | 67% | 0* | 0% | 1 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 5 | 2 |
| WEST C2C VOL I | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 8 | 7 |
| WEST SAMHSA AMP WILLSON | 0* | 0% | 2* | 100% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 5 | 3 |
| WEST SAMHSA ANGER MANAGEMENT | 2* | 25% | 5* | 63% | 1* | 13% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 12 | 4 |
| *Other* | | | | | | | | | | | | | | | | | | | |
| MEDIUM LIFE SKILLS FRYER | 4* | 50% | 4* | 50% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 12 | 4 |

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 54 of 61

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:**    6 **of**    10
**PROCESSED:** 10/13/2025  08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

**FACILITY:**    SCF-General Population MEDIUM-SP

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Peer Programs** | | | | | | | | | | | | | | | | | | | |
| EDU - 7 HABITS | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 12 | 12 |
| BH - FENTANYL EDUCATION | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 28 | 28 |
| BH - HEPATITIS C | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 28 | 28 |
| EDU - YOGA | 7 | 44% | 7* | 44% | 2* | 13% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 16 | 21 | 5 |
| EDU - REIMAGINE | 38 | 43% | 26* | 29% | 20* | 22% | 4 | 4% | 1 | 1% | 0 | 0% | 0 | 0% | 0 | 0% | 89 | 125 | 36 |
| EDU - SPEED OF TRUST | 7* | 50% | 0* | 0% | 6* | 43% | 0 | 0% | 1* | 7% | 0 | 0% | 0 | 0% | 0 | 0% | 14 | 21 | 7 |
| **Pre-Release** | | | | | | | | | | | | | | | | | | | |
| RESTORE PROGRAM | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 25 | 25 |
| **Social Science Education** | | | | | | | | | | | | | | | | | | | |
| Seven Habits of Highly Eff Ppl | 11* | 58% | 3 | 16% | 5* | 26% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 19 | 29 | 10 |
| Why Try 7.1 | 4* | 33% | 3 | 25% | 5* | 42% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 12 | 12 | 0 |
| Thinking For a Change 3.1 | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 16 | 16 |
| **Unassigned** | | | | | | | | | | | | | | | | | | | |
| UNASSIGNED-INTAKE SCF | 81 | 41% | 40 | 20% | 70 | 35% | 7 | 4% | 1 | 1% | 0 | 0% | 0 | 0% | 1 | 1% | 200 | 200 | 0 |
| UNASSIGNED SECTION 017 | 40* | 33% | 28 | 23% | 46 | 37% | 9 | 7% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 123 | 123 | 0 |
| UNASSIGNED SECTION 018 | 44* | 35% | 34* | 27% | 39 | 31% | 6 | 5% | 1 | 1% | 0 | 0% | 0 | 0% | 1 | 1% | 125 | 125 | 0 |
| UNASSIGNED SECTION 019 | 57 | 47% | 23 | 19% | 37 | 30% | 4 | 3% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1% | 122 | 122 | 0 |
| UNASSIGNED SECTION 020 | 42 | 39% | 29* | 27% | 30 | 28% | 4 | 4% | 2 | 2% | 0 | 0% | 0 | 0% | 0 | 0% | 107 | 122 | 15 |
| UNASSIGNED SECTION 021 | 30* | 34% | 19 | 21% | 35* | 39% | 3 | 3% | 1 | 1% | 0 | 0% | 0 | 0% | 1 | 1% | 89 | 122 | 33 |
| UNASSIGNED SECTION 022 | 29* | 37% | 21* | 27% | 27 | 35% | 0 | 0% | 1 | 1% | 0 | 0% | 0 | 0% | 0 | 0% | 78 | 122 | 44 |
| UNASSIGNED SECTION 023 | 19 | 42% | 9 | 20% | 13 | 29% | 3 | 7% | 0 | 0% | 1 | 2% | 0 | 0% | 0 | 0% | 45 | 122 | 77 |
| UNASSIGNED SECTION 024 | 8* | 32% | 8* | 32% | 6* | 24% | 3* | 12% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 25 | 100 | 75 |
| **ASSIGNMENT TOTALS** | 800 | 43% | 410 | 22% | 586 | 31% | 65 | 3% | 12 | 1% | 1 | 0% | 0 | 0% | 5 | 0% | 1879 | 2957 | 1078 |

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 55 of 61

CO DOC
REPORT NO. IJPR301 - 44

INMATE ASSIGNMENT QUOTA BY LOCATION

PAGE: 7 of 10
PROCESSED: 10/13/2025 08:08 AM
REQUESTOR: MICHELLE L YOUNGBLOO

**FACILITY:** SCF-General Population MIN/MINR

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inside Prison Fence** | | | | | | | | | | | | | | | | | | | |
| **Drug & Alcohol** | | | | | | | | | | | | | | | | | | | |
| EAST MAT TUESDAY | 2* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 12 | 10 |
| EAST MAT WEDNESDAY | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 12 | 11 |
| **Education** | | | | | | | | | | | | | | | | | | | |
| Carpentry I | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 15 | 15 |
| Intro to Food Prod Principles | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 20 | 20 |
| SLN 1 Acceleron | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 10 | 10 |
| Basic Customer Service | 6* | 75% | 0* | 0% | 2* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 11 | 3 |
| Introduction To Foods | 8* | 62% | 3 | 23% | 1* | 8% | 0 | 0% | 0 | 0% | 1* | 8% | 0 | 0% | 0 | 0% | 13 | 30 | 17 |
| Basic Customer Service | 5* | 83% | 0* | 0% | 1* | 17% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 10 | 4 |
| Intro to Computer Info Sys | 13* | 68% | 0* | 0% | 4* | 21% | 2* | 11% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 19 | 23 | 4 |
| Acad Achievement Strategies | 3 | 43% | 1* | 14% | 2 | 29% | 1* | 14% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 13 | 6 |
| EAST ESL PM | 0* | 0% | 0* | 0% | 4* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 10 | 6 |
| Intro PC Applications | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 20 | 20 |
| Acad Achievement Strategies | 7* | 64% | 2 | 18% | 2* | 18% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 11 | 13 | 2 |
| Desktop Publishing Software | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 20 | 20 |
| EAST ESL AM | 0* | 0% | 0* | 0% | 5* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 10 | 5 |
|  | 0* | 0% | 0* | 0% | 7* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 11 | 4 |
| Advanced Pc Applications | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 20 | 19 |
| General Education Diploma (GED | 0* | 0% | 0* | 0% | 2* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 7 | 5 |
| General Education Diploma(GED) | 3* | 60% | 0* | 0% | 2* | 40% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 12 | 7 |
| **Facility Work Assignment** | | | | | | | | | | | | | | | | | | | |
| COFFEE SHOP CLERKS | 2* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| CULINARY APPRENTICES | 1* | 20% | 2* | 40% | 1* | 20% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 7 | 2 |
| EAST CULINARY PORTERS | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| EAST GROUNDS MAINTENANCE | 2 | 40% | 2* | 40% | 1* | 20% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 10 | 5 |
| EAST RECREATION | 8* | 73% | 2 | 18% | 1* | 9% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 11 | 16 | 5 |
| LU 31 FT | 2* | 25% | 4* | 50% | 2* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 10 | 2 |
| T ADMINISTRATION FT | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 3 | 2 |
| T CLIN CUSTODIANS | 0* | 0% | 1* | 50% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| T PRP PARAPRO COOPER | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 1 | 0 |
| EAST CULINARY CLERKS | 0* | 0% | 0* | 0% | 2* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 3 | 1 |

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 56 of 61

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:** 8 **of** 10
**PROCESSED:** 10/13/2025 08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

**FACILITY:** SCF-General Population MIN/MINR

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| East Training-Porters | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 2 | 2 |
| LU 22 FT | 7* | 70% | 2 | 20% | 1* | 10% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 10 | 10 | 0 |
| LU 32 FT | 6* | 75% | 0* | 0% | 2* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 10 | 2 |
| LU 23 FT | 1* | 14% | 4* | 57% | 2 | 29% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 10 | 3 |
| LU 33 FT | 4 | 40% | 3* | 30% | 3 | 30% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 10 | 10 | 0 |
| UHL PARA-PROS | 4* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 4 | 0 |
| LU 24 FT | 6* | 67% | 0* | 0% | 3 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 9 | 10 | 1 |
| PINZENSCHAM PARA-PROS | 1* | 50% | 0* | 0% | 0* | 0% | 0 | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| LU 25 FT | 4* | 67% | 0* | 0% | 2 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 10 | 4 |
| OLSEN PARA-PROS | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| LELAND PARA-PROS | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 3 | 1 |
| *Mental Health* | | | | | | | | | | | | | | | | | | | |
| EAST ANGER MANAGEMENT MBELU | 1* | 17% | 3* | 50% | 2 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 6 | 12 | 6 |
| EAST TRAUMA/STRESS- AYERS | 6* | 60% | 3* | 30% | 0* | 0% | 0 | 0% | 1* | 10% | 0 | 0% | 0 | 0% | 0 | 0% | 10 | 10 | 0 |
| LU 22 DBT GROUP | 2 | 40% | 1 | 20% | 2* | 40% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 12 | 7 |
| EAST ANGER MANAGEMENT- AYERS | 4* | 50% | 3* | 38% | 1* | 13% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 8 | 10 | 2 |
| SAMHSA ANGER MANAGEMENT (VTU) | 6* | 67% | 0* | 0% | 3 | 33% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 9 | 10 | 1 |
| *Physical Plant* | | | | | | | | | | | | | | | | | | | |
| MAINT (HVAC) | 0* | 0% | 0* | 0% | 1* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 3 | 2 |
| *Pre-Release* | | | | | | | | | | | | | | | | | | | |
| RESTORE PROGRAM | 11* | 52% | 3* | 14% | 6 | 29% | 1 | 5% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 21 | 35 | 14 |
| *Social Science Education* | | | | | | | | | | | | | | | | | | | |
| EAST DECISION POINTS | 5* | 71% | 2* | 29% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 12 | 5 |
| EAST- T4C | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 8 | 8 |
| **ASSIGNMENT TOTALS** | 153 | 48% | 49 | 15% | 103 | 32% | 9 | 3% | 3 | 1% | 1 | 0% | 0 | 0% | 2 | 1% | 320 | 608 | 288 |

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 57 of 61

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:** 9 **of** 10
**PROCESSED:** 10/13/2025 08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 58 of 61

**FACILITY:**   SCF-General Population Protective Custody

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN. INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Inside Prison Fence** | | | | | | | | | | | | | | | | | | | |
| **Education** | | | | | | | | | | | | | | | | | | | |
| Carpentry I | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 8 | 8 |
| Ethics And Values | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 8 | 8 |
| General Education Diploma(GED) | 1* | 20% | 1 | 20% | 3* | 60% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 5 | 15 | 10 |
| **Facility Work Assignment** | | | | | | | | | | | | | | | | | | | |
| LAUNDRY PC | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 4 | 3 |
| LU 5 CUSTODIANS | 5 | 38% | 1* | 8% | 6* | 46% | 1 | 8% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 13 | 14 | 1 |
| LU 6 OCA | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 6 | 6 |
| LU 7 CUSTODIANS | 4 | 44% | 1* | 11% | 3 | 33% | 1* | 11% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 9 | 14 | 5 |
| LU 8 CUSTODIANS | 3* | 21% | 0* | 0% | 10* | 71% | 1 | 7% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 14 | 14 | 0 |
| PC BARBERS | 1* | 25% | 1 | 25% | 2* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 6 | 2 |
| PC CHAPLAIN CLERKS | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 6 | 5 |
| PC ELECTRICAL | 0* | 0% | 0* | 0% | 3* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 3 | 0 |
| PC GENERAL MAINTENANCE | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 3 | 1 |
| PC PLUMBING | 3* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 3 | 0 |
| PC RECREATION | 1* | 25% | 0* | 0% | 3* | 75% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 6 | 2 |
| LU 7 OCA | 3* | 75% | 0* | 0% | 1* | 25% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 4 | 6 | 2 |
| LU 8 OCA | 1* | 50% | 0* | 0% | 1* | 50% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 6 | 4 |
| PC HOUSEKEEPING | 0* | 0% | 0* | 0% | 2* | 100% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 4 | 2 |
| PC TABLEWASHERS | 4* | 31% | 2* | 15% | 7* | 54% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 13 | 35 | 22 |
| **Mental Health** | | | | | | | | | | | | | | | | | | | |
| PC Anger Management Ayers | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 10 | 10 |
| PC C2C VOL I | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 3 | 3 |
| PC MH PEER ASSISTANTS | 1* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 1 | 2 | 1 |
| SEEKING SAFETY (LU 5) | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 12 | 12 |
| BH Peer Specialist | 1* | 50% | 1* | 50% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 2 | 2 | 0 |
| PC SAMHSA ANGER MNGMT WILLSON | 1* | 14% | 1* | 14% | 4* | 57% | 1* | 14% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 7 | 10 | 3 |
| PC Trauma/Stress- Ayers | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 10 | 10 |
| SEEKING SAFETY (LU7) | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 12 | 12 |
| SEEKING SAFETY (LU8) | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 12 | 12 |
| **Peer Programs** | | | | | | | | | | | | | | | | | | | |
| EDU - 7 HABITS | 6* | 55% | 1* | 9% | 4 | 36% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 11 | 16 | 5 |

**CO DOC**
**REPORT NO. IJPR301 - 44**

**INMATE ASSIGNMENT QUOTA BY LOCATION**

**PAGE:** 10 **of** 10
**PROCESSED:** 10/13/2025 08:08 AM
**REQUESTOR:** MICHELLE L YOUNGBLOO

**FACILITY:** SCF-General Population Protective Custody

| SECTION LOCATION | CAUCASIAN | | BLACK | | HISPANIC | | NATIVE AMERICAN, INDIAN | | ASIAN | | NATIVE HAWAIIAN / PACIFIC ISL | | UNKNOWN | | OTHER | | ASSIGNED | QUOTA | VACANT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| BH - FENTANYL EDUCATION | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 14 | 14 |
| EDU - 7 HABITS | 3* | 100% | 0* | 0% | 0* | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 3 | 3 | 0 |
| BH - HEPATITIS C | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 14 | 14 |
| *Pre-Release* | | | | | | | | | | | | | | | | | | | |
| RESTORE PROGRAM | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 18 | 18 |
| **ASSIGNMENT TOTALS** | 41 | 37% | 12 | 11% | 53 | 48% | 5 | 5% | 0 | 0% | 0 | 0% | 0 | 0% | 0 | 0% | 111 | 331 | 220 |

| **COMPLEX TOTALS** | 1117 | 43% | 527 | 21% | 813 | 32% | 87 | 3% | 17 | 1% | 2 | 0% | 0 | 0 | 7 | 0% | 2570 | 4153 | 1583 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Case No. 1:26-cv-01199-RTG   Document 1   filed 03/23/26   USDC Colorado   pg 59 of 61

Retail

U.S. POSTAGE PAID
FCM LG ENV
CARSON CITY, NV 89706
MAR 16, 2026
$3.84
S2324E502854-10

80294


RDC 99

COLORADO DEPARTMENT OF CORRECTIONS
NAME: Rodney Faires
Register Number: 171195  Unit: SCF1A-305
PO BOX: 6000
City, State, Zip: Sterling, CO. 80751

U.S. Dist. Ct.
901-19th St., Room A105
Denver, CO. 80294-3589

